WILLARD PENNINGTON v. JOHN WEIS, JR., et al., Doing Business as JOHN J. MEIER & COMPANY, Appellants.—No. 39057.—184 S. W. (2d) 416.

Division Two, December 4, 1944.

Rehearing Denied or Motion to Transfer to Banc Overruled, January 2, 1945.

*Paul C. Sprinkle, William F. Knowles* and *Sprinkle & Knowles* for appellants.

*Ben W. Swofford, Mitchell J. Henderson, Jr.,* and *T. James Conway, Jr.,* for respondent.

752

WESTHUES, C.—Willard Pennington obtained a judgment against the defendants in the sum of $18,000 as damages for personal injuries sustained in a collision between a truck owned by the defendants and a motorcycle being operated by Pennington. Failing to obtain a new trial defendants appealed.

The case was submitted to a jury under the humanitarian doctrine. Defendants' principal contention is that the evidence was insufficient to sustain the verdict. The collision occurred about 10:30 A. M., February 5, 1943, at the intersection of Charlotte street and Independence avenue, Kansas City, Missouri. The truck in question was being driven north on Charlotte street and the motorcycle west on Independence avenue. There was a sign on Charlotte street warning traffic to slow down to ten miles per hour for the intersection and a sign on Independence avenue giving a warning to slow to fifteen

miles per hour. The driver of the truck testified that he almost came to a stop at the south line of Independence to permit two cars which were being driven east on Independence avenue to pass in front of him; that he entered the intersection at a speed of about two to four miles per hour; that he looked east and saw a motorcycle about one hundred and fifty feet away approaching the intersection; that he assumed or thought he had sufficient time to cross the intersection ahead of the motorcycle; that he increased his speed and drove through the intersection without again looking to the east; that he did not notice the motorcycle any more until he felt it strike his truck. He testified that the front end of the truck was then about even with the building line north of Independence avenue. Plaintiff testified that he slowed down to about fifteen miles per hour as he approached the intersection; that when he was about twenty-five feet from the east line of Charlotte street he looked to the south and then to the north and noticed no cars approaching; that when he turned his head from the north to look straight ahead he saw the truck, traveling fifteen to twenty miles per hour, crossing the intersection; that he immediately applied the brakes and turned north with the truck in an attempt to avoid a collision; that the left handle bar of the motorcycle came in contact with the truck. Plaintiff was thrown to the pavement and sustained serious injuries. His pelvis was fractured and his right kidney was injured to such an extent that it had to be removed.

We need not review the evidence to determine whether plaintiff was negligent in placing himself in a position of peril, because under the humanitarian doctrine that is no defense. We will assume, therefore, that plaintiff's peril was due to his own negligence. The question for decision is, does the evidence justify a finding that a collision could have been avoided if the operator of the truck had exercised due care? That answer must be in the affirmative. The evidence of the driver of the truck materially aided plaintiff's case. He testified that he saw the motorcycle approaching from the east, a distance of about one hundred and fifty feet, when the truck was entering the intersection. The driver then looked north and paid no further attention to the motorcycle. This in view of the fact that he should have known that the motorcycle would be dangerously near his truck by the time the truck came into its pathway. The driver also testified that when the front end of the truck was entering the north half of Independence avenue he could have turned west on that street. There was no traffic going south on Charlotte at that time. The driver also stated that when he was south of the center of Independence avenue he could have stopped his truck within a distance of a foot. A jury could well have found from the evidence that the driver of the truck was guilty of negligence in not glancing to the east to

see where the motorcycle was before the truck was driven across the center line of Independence avenue. The evidence also justified an inference that had the driver looked to the east after crossing the center line a collision could have been avoided with ease by a swerving of the truck to the left when plaintiff's motorcycle was within twenty feet of the truck which was at that time in its pathway. The motorcycle was swerved to the right and it would not have taken much space to have permitted it to clear the truck because the left handle bar came in contact with it indicating that it was at that time going practically in the same direction as the truck. The motorcycle was only slightly damaged. A witness testifying for the defendant stated that he saw the collision; that he heard the screeching of the brakes of the motorcycle; that at that time the truck driver looked around at the motorcycle; that the truck was traveling about twelve miles per hour.

■ Appellants in their brief state:

"There is no evidence in the case to the effect that the plaintiff either as he approached the intersection or entered the intersection was oblivious. The plaintiff definitely stated that at no time did the motorcycle get in front of or in the path of the truck, and he further testified that the truck did not run over the motorcycle."

Obliviousness is not a necessary element of the humanitarian doctrine. A person may be in imminent peril, unable to extricate himself, and yet be very conscious of the peril. Plaintiff in this case, when he turned from looking north for traffic and saw the truck, realized his peril but was unable to extricate himself. That is just the point where the driver of the truck, had he glanced to the east, could have discovered plaintiff's peril, swerved to the left and avoided the impact. As we said before, the jury was justified in finding that the driver was negligent in not looking to the east when he knew the motorcycle was approaching and that had he looked he would have discovered plaintiff's peril in time to have avoided the collision.

■ As to the point that the motorcycle was not in the pathway of the truck appellants cite Lamoreux v. St. Louis-San Francisco R. Co., 87 S. W. (2d) 640, 337 Mo. 1028, and McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633. Appellants quoted the following from the McGowan case:

"We think it should be said the respondent did not enter the danger zone until he took the last step or so before going into the course the car would take; . . . ."

A pedestrian may be able to stop at any moment before taking the next step, however, a car or motorcycle cannot be stopped so quickly. In this case the only evidence as to the distance in which the motorcycle could have been stopped, going at about twelve miles per hour, was that it could have been stopped within a distance of thirty feet.

We may assume that experienced truck drivers, and the evidence shows the driver of the truck in question was such, know this. Appellants also cite Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, and quote the following therefrom:

"'The only kind of a humanitarian case plaintiff could make, under the actual facts that he stated, was one in which plaintiff's position of imminent peril began and defendant's duty arose after he came into the path of defendant's car *or so near thereto that he was then unable to keep from going on into it.'*" (Italics ours.)

We are of the opinion that plaintiff's evidence justifies a finding that he was so near the truck that he was unable to keep from going into it at a time when the driver of the truck could have, with due care, discovered his peril and avoided the collision. The instructions, plaintiff's as well as the defendants', required such a finding before authorizing a ▉ verdict for plaintiff. We must rule the point against appellants.

▉ Appellants complain of instruction number one given at plaintiff's request. The fault appellants find with the instruction, as stated by them, is:

". . . that said instruction allows a recovery under said doctrine when the plaintiff was approaching a position of imminent peril; said instruction does not inform the jury as to when plaintiff was in a position of imminent peril, but said instruction grants the jury a roving commission to decide for itself all of the elements necessary for a recovery under said doctrine."

A number of cases were cited by appellants. We will discuss only one of these to illustrate the point. Smithers v. Barker, supra, was cited. The instruction there was condemned for the reason that the trial court by the instruction attempted to inform the jury as to when plaintiff was in a position of peril. Note that at page fifty-one of 111 S. W. (2d) the court italicized the following parts of the instruction which rendered it erroneous:

"Defendant . . . *saw or* . . . *could have seen* the automobile, . . . *entering into, upon and crossing* said intersection."

The reason the instruction was condemned was that it broadened the peril zone. The word "entering", of course, referred to a time when plaintiff may not have been in peril but it led the jury to believe that within the meaning of the law he was in peril. In the case before us the instruction is not vulnerable on that theory. It submitted such questions as the agency of the driver, the scope of his employment and whether the truck was being driven upon Charlotte street and the motorcycle on Independence avenue, etc. Then the instruction continues:

". . . and if you further find and believe from the evidence that at the time and place mentioned in evidence the plaintiff, Willard Pennington, was operating a United States Army motorcycle in a

westerly direction along and upon Independence Avenue, at, or near its intersection with Charlotte Street, if so; and the defendants were operating said Ford truck automobile in a northerly direction along and upon Charlotte Street, at, or near its intersection with Independence Avenue, and that the vehicles came into contact and collision at said time and place injuring plaintiff, if so; . . . "

The portion of the instruction covering the peril zone immediately follows the above and reads as follows:

". . . and if you further find and believe from the evidence that at the time and place mentioned in evidence the plaintiff *was in a position of imminent peril, and unable to extricate himself therefrom,* of being struck and injured by said Ford truck, if so, and that the driver of the defendants' Ford truck, saw, or by the exercise of the highest degree of care could have seen the plaintiff in such position of imminent peril, if you so find, in time, for the driver of said Ford truck, thereafter, by the exercise of the highest degree of care, . . . " (Italics ours.)

It appears to us that the jury was informed in plain unambiguous language that to authorize a verdict for plaintiff it must find that plaintiff was in peril and unable to extricate himself and that the defendants' driver in the exercise of due care could have discovered plaintiff's peril and *thereafter,* meaning after the peril-could have been discovered, with proper care could have avoided the collision. Appellants urge that the first portion of the instruction above set forth is subject to the condemnation in the Smithers case because it referred the jury to defendants driving their truck on Charlotte street at or near its intersection with Independence avenue and the motorcycle being driven on Independence avenue at or near the intersection in question. Had what is contained in that portion of the instruction been commingled with the second portion of the instruction above set forth appellants' position would be sound. It will be noted that that is what occurred in the Smithers case. Also note the instruction in that case read:

". . . if you further find from the evidence that said *defendant* John T. Barker, *saw or* by the exercise of the highest degree of care, *could have seen the automobile,* which plaintiff was driving, *entering into, upon and crossing said intersection,* . . . "

The instruction in the case before us reads:

". . . and that the driver of the defendants' Ford truck, saw, or by the exercise of the highest degree of care could have seen the plaintiff in such position of imminent peril, . . . "

There is a vast difference in the wording of the two instructions. The question of whether a person is in imminent peril is a question of fact and therefore for a jury to decide. However, instructions should be a guide so that jurors may properly decide the question. In this case

if the jury followed ▮ the instruction and found that plaintiff was in imminent peril, unable to escape therefrom and that the truck driver could have discovered him, had he exercised proper care, in time to have averted the collision, such a finding, based upon substantial evidence, would amply support a verdict under the humanitarian doctrine. The trial court gave a converse instruction, at defendants' request, informing the jury in substance that if the driver of the truck was at all times exercising the highest degree of care and if the collision was due to the negligence of the plaintiff then the verdict should be for the defendants. We are of the opinion that the issue was properly submitted and the jury having found for plaintiff we are not authorized to disturb the verdict.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.