**BASTIAN et al. v. CAPOOT et al.**

No. 22034.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

Kansas City, Missouri, between a Cadillac automobile owned by plaintiff Fidelity Investment Company, a corporation, and operated by its president, plaintiff Homer C. Bastian, and a 1949 International Truck owned by defendant Country Club Laundry and Zoric Dry Cleaning Company, a corporation, and operated at the time by defendant Justus L. Capoot. Plaintiff Fidelity Investment Company sought in Count 1 of the petition to recover damages to its automobile, and plaintiff Bastian sought in Count 2 to recover traveling expenses incurred by him by reason of the collision. In addition to their answers, denying liability, defendants filed counterclaims, respectively. Defendant Country Club Laundry and Zoric Dry Cleaning Company claimed damages to its truck, and defendant Capoot claimed damages for personal injuries. The verdict was against the plaintiffs on their petition, and in favor of defendants on their respective counterclaims. Defendant Country Club Laundry and Zoric Dry Cleaning Company was awarded $125, and defendant Capoot was awarded $6,500. Judgment was rendered accordingly. Plaintiffs have appealed.

The substance of plaintiffs' statement of the essential facts contained in their brief, which the defendants agree is correct is, in addition to the foregoing, that plaintiffs charged, among other things, excessive speed on the part of the defendants; a violation of certain ordinances of the city; that the defense was contributory negligence, and negligence under the humanitarian doctrine; that on October 16, 1950, the Cadillac automobile of plaintiff Fidelity Investment Company (hereinafter referred to as the "plaintiff corporation") was being driven by plaintiff Bastian in the course of his employment, west on 36th Street and approaching Main Street, and defendant Capoot, within the course of his employment, was approaching 36th Street from the north on Main Street, operating the International truck belonging to the defendant Country Club Laundry and Zoric Dry Cleaning Company (hereinafter called the "defendant corporation"). It was admitted that plaintiff Bastian was traveling

Roy F. Carter and Sprinkle, Knowles & Carter, Kansas City, for appellant.

Ira K. Witschner and T. James Conway, Kansas City, for respondent Justus L. Capoot.

John Murphy, C. Thomas Carr, Tucker, Murphy, Wilson & Siddens, Kansas City, for Country Club Laundry and Zoric Dry Cleaning Co

DEW, Judge.

The plaintiffs brought this action to recover damages alleged to have arisen out of a collision at 36th and Main Streets in

westward across Main Street on 36th Street at the time of the collision. A police officer, witness for the plaintiffs, testified that he found dirt and debris 48 feet west of the east curb of Main Street, which was 59 feet wide, and 12 feet south of the north curb of 36th Street, which was 46 feet wide west of Main Street. The time was 4:00 or 4:30 in the afternoon. Bastian testified that he stopped his car before entering Main Street, and when traffic had cleared, started across the intersection; that when his bumper reached a point about two feet east of the east rail of the southbound streetcar track, or near the center of Main Street, he stopped for a southbound streetcar to pass; however, the streetcar stopped on the north side of Main Street to discharge passengers, whereupon Bastian started on across the street. When in front of the streetcar he said he saw defendants' truck 10 or 15 feet from him and west of the streetcar, coming about 25 miles an hour. He had not been able to see the truck before because of the streetcar. His car was going about 5 to 10 miles an hour. The left front corner of defendants' truck struck the right front corner of plaintiffs' car.

In support of their defenses and counterclaims, the defendants produced evidence that Capoot had entered Main Street a block north, at Armour Boulevard, and had turned south on Main Street; that as he did so, a streetcar passed him going south, and he followed it going about 25 miles an hour; that the streetcar slowed down and stopped at the northwest corner of 36th and Main, at which time he slowed his truck to 15 miles an hour and then proceeded on around the streetcar. He said that he could not see east in the intersection when he was alongside the streetcar, but as he passed it he saw plaintiffs' automobile 5 to 8 feet from his truck. He said the collision took place about the center of the intersection while he was going at about 15 miles an hour. He further testified at length regarding his personal injuries and medical treatment. The defendant corporation introduced evidence regarding the damages to its truck.

The sole error assigned by the plaintiffs is the giving of defendants' Instruction 5. That instruction reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that the Cadillac automobile mentioned in evidence was owned by the Fidelity Investment Company, a corporation, and at the time and place mentioned in evidence was being operated by Homer C. Bastian, as president of said corporation, on company business for and in behalf of said company, if so, and if you further find that Main Street and 36th Street are public streets which meet and intersect as shown by the evidence, and if you further find that the defendant Capoot was operating a truck owned by defendant Country Club Laundry and Zoric Dry Cleaning Company, a corporation, in a southerly direction on Main Street, at or near its intersection with 36th Street, and that Homer C. Bastian was operating the Cadillac automobile in a westerly direction on 36th Street across Main Street, and that the two vehicles collided at said intersection, injuring defendant Capoot, and damaging the truck, if so, and if you further find that defendant Capoot and the said truck at the time and place mentioned in the evidence were in a position of imminent peril of being struck and injured by said Cadillac automobile, if so, and that Homer C. Bastian saw, or by the exercise of the highest degree of care could have seen the defendant Capoot and said truck in such position of imminent peril, if you so find, in time thereafter, by the exercise of the highest degree of care, with the means and appliances then at hand, and with safety to himself and said automobile, to have slackened the speed of said automobile and stopped same, and thereby could have prevented said collision, if so, and that Homer C. Bastian failed to slacken the speed of said automobile and stop same; and if you further find that in so failing to slacken the speed of said automobile and stop same, if

so, Bastian was negligent, and that as a direct and proximate result of the negligence of Bastian (if you find he was negligent) the vehicles collided, and plaintiff was injured and said truck damaged thereby, if so, then the Court instructs you that your verdict should be for the defendants Justus L. Capoot and Country Club Laundry and Zoric Dry Cleaning Company on their counterclaims, and against the plaintiffs on their petition, and this is true even though you may find and believe from the evidence that Justus L. Capoot was also negligent in getting into such position of imminent peril, if any, and that such negligence of Capoot, if any, contributed to cause said collision and his injuries, if any".

Plaintiffs' first contention is that the instruction unduly extended the zone of imminent peril "to any time or place mentioned in evidence". They argue that the instruction merely places defendants as operating their truck in a southerly direction on Main Street "at or near the intersection with 36th Street" and places the plaintiffs as operating their car westerly "on 36th Street across Main Street", and submits to the jury the question whether the defendants were in a position of peril "at the time and place mentioned in the evidence"; that a person is not in a position of imminent peril when approaching it; that no obliviousness was shown in this case so as to extend the zone of imminent peril; that a person charged with negligence under the humanitarian doctrine is under no duty to act until the person in peril "has come into a position of imminent peril"; that the present instruction did not sufficiently limit the jury as to a finding of imminent peril.

Plaintiffs rely strongly upon Cable v. Chicago, B. & Q. Rd. Co., Mo.Sup., 236 S.W.2d 328, 334, to support the above complaint of defendants' Instruction 5. In that case the instruction submitted an issue of imminent peril, placed the plaintiff's truck as being driven "toward the railroad crossing", and the railroad train as being operated "toward said crossing", mentioned in evidence, and told the jury that "If you * * * find and believe that at said time and place, plaintiff was in a position of imminent peril of being struck and injured by defendant's train * * *". It was held in that case that on the facts submitted, the instruction would allow a finding of imminent peril when plaintiff was only "approaching" such a position, and prior to the time a perilous situation arose, and indefinitely extended the field within which the humanitarian doctrine was exacted.

Plaintiffs also cite Buehler v. Festus Merc. Co., 343 Mo. 139, 149, 119 S.W.2d 961, 970. In that case the instruction told the jury that if they believed the car in which plaintiff was riding "became and was in a position of imminent peril" of being struck by appellant's truck "while crossing Mill Street" and the defendants saw or could have seen the Ford car crossing Mill Street "approaching and in the aforesaid position of imminent peril", in time thereafter to have avoided the collision, etc. The court said the word "approaching" must be accorded its ordinary meaning and that it indefinitely extended the field within which vigilance under the humanitarian doctrine was required.

The case of State ex rel. Snider v. Shain, 345 Mo. 950, 137 S.W.2d 527, 528, is also cited. In that case the court condemned the words "in or immediately coming into a position of peril" as unduly extending the danger zone. In Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 51, also cited by plaintiffs, the plaintiff therein testified that he was traveling west toward a street intersection, stopped before entering it, saw defendant's car approaching a block to the north, edged out to the crossing, stopped again, then proceeded across the street until the collision occurred. The instruction allowed a finding of plaintiff's position of imminent peril if the jury found that while plaintiff was driving his car "at, upon and across" the intersection and at said time and place plaintiff was in a position of imminent peril and oblivious thereof, and that defendant saw, or by the exercise of the highest degree of care could have seen, the

98

automobile which plaintiff was driving "entering into, upon and crossing said intersection". The court said the evidence showed plaintiff was not in imminent peril when entering into the intersection nor, in fact, after he had twice stopped his car in the intersection, and that the instruction enlarged the field of imminent peril. Other cases are cited by the plaintiffs in which, under the circumstances therein contained, the court held the instruction to have enlarged the field of imminent peril.

■ It is well settled law in this state that the determination of the issue whether, when and where a position of imminent peril exists in a humanitarian case is a matter exclusively for the jury; that a defendant is under no duty in such a case until the plaintiff comes within the zone of imminent peril and has been seen or could have been seen by the defendant in such position. Newman v. St. Louis Public Service Co., Mo.Sup. en banc, 244 S.W.2d 45. In the latter case the Cable case, supra, and other similar cases are distinguished.

■ In the instant case we do not believe that the preliminary words of the instruction placing the respective vehicles of the parties as operating in a southerly direction on Main Street "at or near its intersection with 36th Street", and "operating * * * in a westerly direction on 36th Street across Main Street", were intended to and did lead the jury, for the purposes of determining defendants' position of imminent peril, to consider the position of the vehicles "at any time" mentioned in the evidence, however remote, as argued by the plaintiffs. Those phrases had reference to the general locations of the vehicles respecting the intersection as they approached the same. In Harrington v. Thompson, Mo. Sup., 243 S.W.2d 519, 524, a similar criticism was made as to the following language of an instruction: "and if you find further that as Ray Harrington approached and went upon said railroad crossing ahead of said approaching train he was then in a position of imminent peril and danger and was oblivious thereto * * *". The court said: "Instruction 1, however, does not predicate liability on a finding that plaintiff was approaching a position of imminent peril. The word 'approached' used in the phrase of the instruction heretofore quoted relates to the approach of plaintiff to the railroad crossing, not to his approach to a position of imminent peril. It requires a specific finding that as plaintiff approached and went upon the crossing he was in a position of imminent peril". The court also cited Stokes v. Wabash R. Co., 355 Mo. 602, 609, 197 S.W.2d 304, 307, on the point.

In the case at bar the instruction proceeds to require a finding that the two vehicles, so described, "collided at said intersection", injuring the defendant Capoot and damaging the truck he was driving. It then requires the jury to find that "at the time and place mentioned in the evidence", defendant Capoot and the truck were "in a position of imminent peril". The testimony in great detail showed the respective positions of the two vehicles immediately preceding the collision, their speed, the distances involved, the facts pertaining to visibility and the physical surroundings. In view of the evidence it cannot reasonably be maintained that the jury misunderstood "the time and place" of the position of imminent peril referred to by the instruction, and that the jury considered a time and place only remotely related to the collision. Newman v. St. Louis Public Service Co., supra; Pennington v. Weis, 353 Mo. 750, 184 S.W.2d 416. We do not recommend the language in question, but do not believe its use in the instruction before us was prejudicial error.

Defendants' second point is that Instruction 5 submits no issues of fact to guide the jury to determine the issues of negligence. It is not pointed out wherein the necessary facts are omitted, unless it be inferred that the same point is made as in Point 1, namely, that sufficient facts were not hypothesized to submit the issue of imminent peril, which we have disposed of hereinabove.

■ Plaintiffs next complain that Instruction 5 contains this language: "In time thereafter, by the exercise of the highest degree of care, with the means and appli-

ances then at hand, and with safety to himself and said automobile, to have slackened the speed of said automobile" should have included "others", whose safety might be involved. There was no testimony as to other persons immediately in the zone of danger whose safety the plaintiff would have been required to consider in stopping or slackening his speed in averting the collision under the humanitarian theory. There was testimony of the discharge of passengers at that time by the streetcar standing at the northwest corner of the intersection and at a safety island located there. We do not consider this sufficient evidence of others being so near the point of collision as to require reference to their safety in the instruction, as claimed. McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W. 2d 907; Brown v. Callicotte, Mo.Sup., 73 S.W.2d 190, 191.

Finding no material error in the trial of the case affecting the merits, the judgment is affirmed.

All concur.