KATHLEEN L. WILSON, Administratrix of the Estate of EDWARD G. JONES, Deceased, Appellant, v. ALBERT TOLIVER, Respondent, No. 44625—285 S. W. (2d) 575.

Division Two, December 12, 1955.

Motion for Rehearing or to Transfer to Banc Overruled, January 9, 1956.

*Russell Roberts, Philip Fowler, Jim Clemens* and *Edwards, Hess & Collins* for appellant.

642

*Richard DeCoster, Thomas R. McGinnis* and *Charles E. Gray* for respondent.

644

[577] BOHLING, C.—A collision of two automobiles gave rise to this action. Edward G. Jones was killed in the collision; and Kathleen L. Wilson, administratrix of his estate sued Albert Toliver for damages. Defendant answered and counterclaimed. The jury

found against plaintiff and for defendant, awarding defendant $16,-000 damages. Judgment followed. Plaintiff contends error was committed in not directing a verdict for plaintiff on defendant's counter-claim, in the exclusion of certain testimony, in giving and refusing certain instructions, and in the argument of defendant's counsel. Each litigant contends the other was guilty of contributory negligence as a matter of law, and plaintiff contends defendant did not make a submissible humanitarian case. These are close factual issues calling for a detailed statement of the facts.

Edward G. Jones, with his wife, Lenora, to his right on the front seat, and his sister, Mrs. Bertha Garrett, on the right side of the rear seat, left Kirksville, Missouri, their home, in Jones' 5-passenger Chevrolet coupe about 4:15 a.m. July 20, 1952, for Galesburg, Illinois. Their route was eastwardly over Missouri highways 6 and 16 to Canton, Missouri.

Albert Toliver, of Ewing, Missouri, was proceeding in his Hudson sedan westwardly over Mo. 6 to La Belle, Missouri, to pick up his son-in-law for a trip to Illinois.

For convenience we refer to Edward G. Jones as plaintiff and to Albert Toliver as defendant.

The two automobiles collided about 5:10 a.m. at the east end of the junction (stated by one litigant to be a lopsided wye) of Highways Mo. 6 and Mo. 16, about one-half mile east of Lewistown, Missouri. Each was in its proper lane of travel: the Chevrolet, for eastbound traffic on Mo. 16; the Hudson, for westbound traffic on Mo. 6. The morning was clear and sunny. The blacktopped highways, each 24 feet wide, were dry. No obstructions to the view or appreciable grades are involved.

Plaintiff and his wife were instantly killed. Mrs. Garrett and defendant, who was knocked unconscious, were seriously injured. They were the only eyewitnesses to the impact of the automobiles.

Highway Mo. 6 extends westwardly from U. S. 61 near Taylor, Missouri, through Ewing, Lewistown, La Belle and Kirksville to a point on U. S. 36 near St. Joseph, Missouri. Highway Mo. 16 is an east-west road, 18 miles in length, between the junction of Mo. 6 and 16 to U. S. 61 at Canton, about 14 miles north of Taylor, and passes through Monticello. What is now Mo. 16 was originally part of Mo. 6 (See Centennial Road law, 1st Ex. Sess. 1921, p. 155, § 29, Lewis county; § 227.020, statutory references are to RSMo 1949 and VAMS). In the nineteen thirties a new highway was constructed from near Taylor through Ewing to connect at the junction involved with said east-west road across Lewis county, and the number of the old highway from the junction to Canton was changed to Mo. 16 and the new high-way was designated a part of Mo. 6. The old highway (now Mo. 6 and Mo. 16) is a due east-west road in the vicinity of the junction. High-

way Mo. 6 runs slightly southeast-northwest at the junction, forming an acute angle with Mo. 6 at the east end of the junction.

Each highway had its center line marked by a dashed line, painted white. The painted center line on Mo. 6 followed the curve of Mo. 6 through the junction; whereas the painted center line of Mo. 16 ended at the north edge of the westbound traffic lane (if extended) of Mo. 6. Consequently, a westbound automobile on Mo. 6 would not pass over the painted center line of Mo. 16 at the junction; but an automobile from the west on Mo. 6 desiring to proceed eastwardly over Mo. 16 would pass over the painted center line of Mo. 6 at the junction. The general layout for painting the center lines is under the maintenance department of the State Highway Commission, comes [578] through to the district level, and the district maintenance department does the actual painting.

A highway sign for eastbound traffic just south of the pavement showing, with arrows, Junction Mo. 16 straight ahead, Mo. 6 to the right, was 300 or more feet west of the west end of the curve for Mo. 6 at the junction; and immediately opposite said west end of the curve was another sign showing Mo. 6 to the right and Mo. 16 straight ahead. There was no "stop" sign for either plaintiff or defendant. On the north side of Mo. 16 for westbound traffic, not here involved, were two highway signs; one, approximately 60 feet east of said west end of the curve, showed Mo. 6 westbound, and the other, about 230 feet farther east, was a stop sign. In the neighborhood of 472 feet east of said west end of the curve and 300 feet east of the easternmost meeting point of the highways was a crossover for the interchange of traffic between the two highways.

Defendant testified that he first saw the Chevrolet when the two automobiles were about 300 feet apart, each being about 150 feet from the point of impact, and that each automobile was traveling about 50 miles an hour. Plaintiff's evidence was corroborative. Mrs. Garrett, the sole survivor in the Chevrolet and plaintiff's witness, stated she could not give the speed, but that plaintiff had traveled at about the same speed from Kirksville to the point of collision, 45 or 50 miles, in about 50 minutes, and she noticed no appreciable difference in the speed of the Chevrolet after she saw defendant's Hudson. (Consult State v. Enochs, 339 Mo. 953, 98 S. W. 2d 685, 686[1]; State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S. W. 2d 233, 238[8].) The case is submitted on these estimates.

Mrs. Garrett further testified that the Chevrolet traveled in the eastbound lane of Mo. 16 and was never on the wrong side of Mo. 16; that it was east of the house nearest the junction when she first saw defendant's Hudson approaching but she could not say where the Chevrolet was with reference to the junction (the house is approximately 170 feet west of the west end of the curve and approximately 306 feet west of the point of impact); that the Hudson was "weaving"

when she looked up; that it swerved to the left, crossed the center line on the curve of Mo. 6, then back into its lane, and appeared to come into the Chevrolet head on; that a "screeching sound" of the Hudson's tires accompanied its weaving, and that plaintiff's last words were: "I wonder what that guy - - -," and that his wife screamed just before the collision.

Defendant was familiar with the junction. He testified that he was at all times in his proper lane of travel around the curve and his automobile did not swerve or weave across the center line of Mo. 6; that he could have seen the Chevrolet some distance farther back than 150 feet; that "when I first saw it he was well to his right in his lane of traffic headed east and then all at once, without any signal or anything, he started to cross the white line into my lane of traffic"; and that what he is saying is that the Chevrolet crossed the painted center line of Mo. 6. Defendant also testified that when the automobiles were 300 feet apart he realized the Chevrolet would either go around the curve on Mo. 6 or straight ahead due east on Mo. 16; that he, defendant, continued to follow around the curve on Mo. 6 for 100 feet; that when the automobiles were about 100 feet apart and each 50 feet from the point of impact he first put on his brakes and started to swerve his Hudson; and that he traveled about 100 feet after he saw the Chevrolet before he did anything.

Witnesses Sam Gnuse, who arrived at the scene at 5:25 a.m., before anyone had been removed from either automobile, a first arrival, and Patrolman L. P. Forrest described where the debris was on the highway et cetera. Plaintiff's Exhibit No. 8 is a plat, drawn to scale, of the junction and Mo. 6 and 16 in the immediate vicinity, and it was agreed that it fairly represented the intersection. Witness Gnuse drew a circle on said Exhibit No. 8 indicating where the debris was. Defendant stated the circle [579] represented the approximate point of impact.

Patrolman Forrest made measurements of the scene. He testified: The Hudson bounced back 6 feet and the Chevrolet bounced back 26 feet from the point of impact. It measured 136 feet from the west end of the curve to the point of impact and 35 or 36 feet from the point of impact to where the south edge of the pavement on Mo. 16 meets the northeast edge of the curved pavement on Mo. 6 (the west point of the triangular plot of ground between Mo. 6 and 16). The point of impact was 6 feet south of and opposite the end of the white painted center line of Mo. 16 and 10 feet north of the center line of Mo. 6 at that point, making the point of impact 22 feet north of the south edge of the pavement on Mo. 6. (This corresponds with the circle placed on Exhibit No. 8 by witness Gnuse.) There was a 53-foot straight east-west skid mark of one tire of the Chevrolet in the south lane for Mo. 16 to the point of impact and the skid marks of the Hudson were 50 feet in length.

From photographs offered in evidence: The damage to the Chevrolet was greatest at its right front or southeast corner as it traveled east, including the headlight and front fender. The damage to the Hudson was more on its front, mostly to the right front, with the right front fender pushed back, up and in and the left front fender showing no material damage. One witness testified the left front corner of the Hudson was damaged (as stated in defendant's brief) but he later corrected this, stating he meant the right front corner.

Defendant's theory was that the cars were traveling on the same highway; that the painted curved center line of Mo. 6 divided their lanes for travel, and that § 304.020(3) applied.

Plaintiff contends the collision was within the intersection of Mo. 6 and 16 and § § 301.010(6) and 304.020(12) apply.

The court adopted defendant's theory. Briefly, defendant submitted primary negligence on the part of plaintiff in driving at an excessive speed (50 miles an hour) when plaintiff knew or should have known that in leaving Mo. 6 and proceeding eastwardly on Mo. 16 he would be required to pass over the center line of Mo. 6; and primary negligence in plaintiff operating his automobile so as to cross the center line of Mo. 6 from the south to the north side thereof when defendant was in such close proximity that there was great danger of a collision; and negligence under the humanitarian doctrine in plaintiff failing to turn his car to the right and remain south of the center line of Mo. 6. Plaintiff's instructions sought a recovery on defendant's negligence in driving at an excessive speed and under the humanitarian doctrine in failing to slacken speed and swerve.

 : Section 304.020(3) provides that operators of automobiles meeting an approaching opposing automobile on the same highway "shall turn to the right of the center of the highway so as to pass without interference.".

"An intersecting highway" is defined in § 301.010(6) as "any highway which joins another, whether or not it crosses the same." The area of an intersection has been considered to embrace the paved space common to both highways. Brumback v. Simpson, Mo., 247 S. W. 2d 635, 637[1, 2]; Knight v. Richey, 363 Mo. 293, 250 S. W. 2d 972, 979[10]. See 60 C. J. S. 833, § 351a; 5 Am. Jur. 662, § 288; 2 Blashfield, Automobile Law, § § 981, 982.

The question whether the highways were intersecting highways was for the court under the undisputed facts. The area common to Mo. 6 and Mo. 16 under the instant facts embraced at least the paved area bounded by a prolongation of the northeast curved edge of the pavement of Mo. 6 across Mo. 16, the west end of the curve of Mo. 6, and the north and south edges of the pavement of Mo. 16 within said east and west boundaries. Plaintiff entered upon Highway Mo. 16 when he passed the west end of the curve of Mo. 6. In the circumstances the rights of the motorists at and within the intersection is not to be ruled

by the fact that the district maintenance department [580] of the State Highway Commission did not paint the center line on Mo. 16 to connect with the center line painted around the curve of Mo. 6; but stopped the center line of Mo. 16 at the imaginary prolongation of the northeast edge of the pavement of Mo. 6 as it curved across Mo. 16. The case involves the operation of motor vehicles across a highway intersection; and the rights of the motorists are governed by statutory provisions enacted by the General Assembly regulating traffic at highway intersections.

Defendant also argues that plaintiff's contention, if sustained, would give a motorist intending to make a left turn into a street joining but not crossing another the right of way to enter the intersection and make the left turn over an opposing motorist on the same street reaching the intersection at approximately the same time, and in effect nullify § 304.020(6) which requires a motorist desiring to turn left to proceed beyond the center of the intersection before turning left. Section 304.020(12) applies to motorists approaching an intersection on different streets. With respect to this contention other provisions of the law exacting the highest degree of care of motorists would require the motorist desiring to so turn left to remain to his right of the center of the highway until he could make the turn in the exercise of proper care. Defendant under the instant facts was the motorist traveling around the curve and making a turn to the left.

Plaintiff contends defendant was guilty of contributory negligence as a matter of law and was not entitled to his submissions of primary negligence against plaintiff.

Defendant says the application of statutory regulations of motor vehicle traffic gives consideration to the existing circumstances and conditions, and the regulations are not to be applied rigidly, absolutely and peremptorily or receive literal constructions resulting in an absurdity, citing Wines v. Goodyear T. & R. Co., Mo. App., 246 S. W. 2d 525, 528[1-4], a case involving traffic on a six lane street when icy and where the motorist apparently, although not following the letter of the statute, exercised a greater degree of care than was exacted by the statute under the facts and circumstances. That is not the instant situation.

Absent statute or ordinance regulation of vehicle traffic at highway intersections, the vehicle first reaching and entering the intersection has the right of way over a vehicle subsequently reaching the intersection unless the situation would indicate to a reasonably prudent man that to proceed would probably result in a collision, it being the duty of the second arrival to allow the first arrival to pass in safety. Minnis v. William J. Lemp Brewing Co., Mo. App., 226 S. W. 999, 1000[2]; 60 C. J. S. 871, § 362, b, (3); 5 Am. Jur. 663, § 289; 2 Blashfield, Automobile Law, 206, § 991.

This common law rule has been changed by § 304.020(12), requiring a motorist approaching from the left to yield the right of way to another approaching from the right on an intersecting highway; provided: "The right of way shall mean the right to proceed when two or more vehicles will reach such intersection at approximately the same time."

Generally, an issue of contributory negligence turns on the testimony of an opponent's witness or on conflicting testimony, and in such instances the issue is for the jury. Where a litigant's own evidence establishes his contributory negligence, the issue is for the court.

The defendant saw the Chevrolet when the two cars were 300 feet apart, and each 150 feet from the point of impact. Each car was traveling 50 miles an hour. The greatest length of the area common to both highways was 172 feet, which was along the south edge of a prolongation of the pavement for Mo. 16 through the intersection. When plaintiff entered the west end of this common area defendant was approximately 133 feet from the intersection; and when defendant entered the intersection plaintiff had covered approximately **[581]** 136 of the 172 feet, was just south of the end of the painted center line of Mo. 16, and about to pass from the area common to both highways and wholly onto Mo. 16. This is not a case of split second priority in entering upon the intersection. Under the authorities plaintiff had the superior right to proceed across the intersection and, at first, a right to assume that defendant would obey the law and yield the right of way. Knight v. Richey, 363 Mo. 293, 250 S. W. 2d 972, 976; Gabelman v. Bolt, Mo. App., 68 S. W. 2d 909, 913[1], upheld, 336 Mo. 539, 80 S. W. 2d 171, 172[2]; Sommer v. St. Louis Pub. Serv. Co., Mo. App., 262 S. W. 2d 335, 338[1]; Ritzheimer v. Marshall, Mo. App., 168 S. W. 2d 159, 165[4]; Minnis v. William J. Lemp Brewing Co., supra.

Defendant testified he realized that plaintiff would turn to the right around the curve on Mo. 6 or go straight ahead due east on Mo. 16. If plaintiff intended to go around the curve, he would be expected to start turning at the west end of the curve. Defendant states in his brief that "plaintiff's automobile was not swerved before the accident." Soon after plaintiff passed said west end of the curve defendant had warning and should have realized from plaintiff's failure to turn that plaintiff was going straight ahead and not turning. Defendant testified: "Q. You are unable to tell the jury then any more than you did put on the brakes sometime before this accident occurred, is that right? A. Immediately before it occurred, yes, sir. Q. You mean that you did put them on immediately before it occurred? A. Yes. Q. Sir? A. Yes, sir. Q. Can't you give us some idea how far back you were when you put your brakes on? A. Approximately fifty feet. Q. You traveled then with the Jones car in

your range of visibility for approximately a hundred feet before you did anything, is that right? A. Yes."

"Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person * *." § 304.010; Borgstede v. Waldbauer, 337 Mo. 1205, 1210, 88 S. W. 2d 373, 374[4, 5]; Burlingame v. Landis, 362 Mo. 523, 242 S. W. 2d 578, 580[1, 2].

Defendant may not at first have been chargeable with knowledge of plaintiff's intention to proceed straight ahead due east but he was aware of plaintiff's approach. Defendant's testimony establishes that he was taking a chance on being able to go through the intersection at undiminished speed after he saw plaintiff would reach the intersection well ahead of him and also after he saw plaintiff in and proceeding across the intersection. He admittedly traveled approximately 100 feet before acting to avoid a collision with a car that traveled about 136 feet into the intersection, needed only a fraction of a second to be in the clear, and which had entered the intersection when defendant was about 133 feet from it. The facts demonstrate that neither defendant nor plaintiff was able to stop his automobile within a braking distance of approximately 50 feet. We may assume that experienced motorists in the exercise of the highest degree of care know that an automobile cannot be stopped within a braking distance of 50 feet when traveling 50 miles an hour. Consult Pennington v. Weis, 353 Mo. 750, 184 S. W. 2d 416, 418; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S. W. 2d 254, 257[4]. Defendant was intent on proceeding through the intersection at unabated speed until it was too late for him to avoid the collision. Under the provisions of § 304.020(12) defendant's actions were not an exercise of the highest degree of care in the circumstances of record. The only reasonable conclusions to be drawn from defendant's testimony are that his actions proximately contributed to the resulting collision and that he was negligent as a matter of law. Yeaman v. Storms, 358 Mo. 774, 217 S. W. 2d 495, 499[6]; Roberts v. Consolidated Paving and Material Co., 335 Mo. 6, 70 S. W. 2d 543[1]; Burton v. Moulder, Mo., 245 S. W. 2d 844, 846[6-8]; Folluo v. Gray, Mo. App., 256 S. W. 2d 273, 276[1, 2]. [582] See also Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S. W. 2d 477, 479[2-5].

It follows that defendant's submissions of primary negligence should have been refused. His sole cause instruction should have been refused. Johnson v. Cox, Mo., 262 S. W. 2d 13, 14; Wilkins v. Stuecken, 359 Mo. 1047, 225 S. W. 131, 134[3, 4]. As stated, the case involves statutory regulations of motor traffic at highway intersections.

. We here take up defendant's contention that plaintiff was contributorily negligent as a matter of law in crossing over the center line of Mo. 6 directly into the path of defendant's oncoming car at a time when defendant's car was in dangerous proximity to plaintiff's car; citing Yeaman v. Storms, supra; Branscum v. Glaser, Mo., 234 S. W. 2d 626, 627[1-3]; Folluo v. Gray, supra. The stated contention is based on defendant's trial theory that the two cars were approaching one another on the same highway and is not well taken under our ruling that the law governing the rights of motorists at highway intersections is applicable. However, the case is to be retried and we consider the issue of plaintiff's contributory negligence as a matter of law, a close issue under the facts.

It is stated in Danzo v. Humfeld, Mo., 180 S. W. 2d 722, 726: " 'So far as primary negligence is concerned, the obligation to exercise due care remains mutual and reciprocal. One may not disregard the laws of prudence and exact of others a primary obligation to protect him against his lack of caution. If he exercises due care for his own safety, then, absent information to the contrary, he may rely upon the presumption that others will obey the law.' " Clark v. Chicago & A. R. Co., 127 Mo. 197, 213, 29 S. W. 1013, 1017.

Many motorists seemingly have the idea that the mere fact they reach and enter an intersection ahead of a motorist on an intersecting highway gives them the right to proceed across the intersection regardless of the conditions confronting them and relieves them of all caution. This is not the law. Under § 304.010 motorists are required to exercise the highest degree of care at all times and places on the highways of this state. Gude v. Weick Bros. Undertaking Co., 322 Mo. 778, 783, 16 S. W. 2d 59, 60; La Banca v. Pundmann, Mo., 147 S. W. 2d 466[1].

All of the affirmative testimony of plaintiff's witnesses established that plaintiff operated his car without any change in its speed or course across the intersection until he applied his brakes within approximately 53 feet of the point of impact. Defendant's testimony did not aid plaintiff. Mrs. Garrett testified that she heard a "screeching sound of the tires" of defendant's car and that the sound accompanied the "weaving" of the Hudson. The "screeching sound" was, of course, the result of defendant's application of the brakes. Plaintiff, in the exercise of the highest degree of care, was warned by the highway signs for eastbound traffic, first, that he was approaching the junction of Mo. 6 and Mo. 16; that Mo. 6 turned to his right and Mo. 16 continued straight ahead, and this warning was repeated when he entered the west end of the intersection. Plaintiff knew from these warning signs that westbound traffic on Mo. 6 crossed the lane for eastbound traffic on Mo. 16, plaintiff's intended line of travel. Notwithstanding these warnings, plaintiff continued ahead at unabated speed and took no action to avoid a collision until it was too late to do

so. Consideration is to be given the unusual situation existing at the intersection; the distance plaintiff had to travel to cross the intersection; the fact that defendant's car was within his observation both prior to and after he entered the intersection; that the only line of travel for defendant (westbound) on Mo. 6 was across Mo. 16 at the intersecton, whereas plaintiff, at first and depending on his intentions, could have proceeded southeast along the curve of Mo. 6 or, straight east on Mo. 16, and that defendant was proceeding ahead at unabated speed. With each car equally distant from the point of impact (150 feet) and approaching the point of impact at the same speed (50 miles an hour), as the case was submitted in the trial court [583] and here, it is inescapable that the collision, as demonstrated by the results, was inevitable unless plaintiff or defendant took action to prevent it, which, from all the affirmative testimony in the case, neither did until it was too late. The greater the speed the earlier the situation should be comprehended. The precautions to be taken increase with the danger encountered. Much of what has been said regarding defendant's negligence as a matter of law is applicable here. Reasonable minds should agree that plaintiff and defendant were taking chances in attempting to pass through the intersection ahead of the other, and each was negligent as a matter of law. See authorities cited re defendant's negligence as a matter of law, and also Hammond v. Emery-B.-T. Dry Goods Co., Mo., 240 S. W. 170, 173[1-4].

■ Plaintiff also contends defendant did not make a submissible case under the humanitarian doctrine on plaintiff's failure to turn to his right. Plaintiff stresses a portion of defendant's testimony that it appeared to defendant plaintiff "had started around the curve and then changed his mind and pulled to the left" and argues defendant's imminent peril did not arise "until plaintiff 'started to cross the white line' " of Mo. 6; that is, when each car was only about 50 feet from the point of impact. Defendant testified "Well, I couldn't tell you exactly," "I couldn't tell you for sure" whether plaintiff proceeded straight east; that, asked whether plaintiff was going to his right and then to his left, defendant answered: "No, he was following his line of traffic however it runs and then he appeared to cross the line into my lane of traffic"; that defendant was telling counsel plaintiff "crossed the center line into my lane of traffic without any warning." We have studied defendant's testimony on this fact issue with extreme care and from the record his only testimony having probative value on the issue is that plaintiff proceeded through the intersection in plaintiff's lane of traffic and, instead of turning southeast along the curve of Mo.6, plaintiff crossed the curved painted center line of Mo. 6 in the eastbound traffic lane of Mo. 16 in the intersection as eastbound traffic on Mo. 16 was required to do. We

are of opinion the imminent peril zone is not as restricted as plaintiff contends.

"'The meaning of the term 'imminent peril' as the basic fact of the humanitarian doctrine has been well settled. The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient * *.'" Blaser v. Coleman, 358 Mo. 157, 213 S. W. 2d 420, 421[2]. While plaintiff, having entered the intersection first, had a superior right to cross, his right to assume that defendant would yield the right of way and permit him to clear the intersection was not an absolute right but was subject to the fundamental duty of all motorists to exercise the highest degree of care to avoid injury to himself or others. Weis v. Melvin, Mo., 219 S. W. 2d 310, 311[1-3]; Pappas Pie & B. Co. v. Stroh Bros. Del. Co., Mo. App., 67 S. W. 2d 793; 796[1]. With no change in the speed of plaintiff's automobile, a finding that defendant was oblivious of plaintiff's intention to proceed due east as plaintiff first proceeded into the intersection was warranted. The facts demonstrated that neither plaintiff nor defendant was able to stop his automobile within a distance of 50 feet. Plaintiff could have turned his car with greater celerity than he could effect a stop. A fair reading of the whole of defendant's testimony, as well as that of other witnesses to the fact, is that plaintiff pursued a straight due east course across the intersection. The collision occurred where the paths for eastbound traffic on Mo. 16 and westbound traffic on Mo. 6 cross near the southeast end of the intersection. Taking the evidence favorable to defendant, defendant was pursuing his course without deviation around the curve at undiminished speed. Plaintiff was chargeable with notice as he proceeded across the intersection that if both cars continued on their respective courses at their respective speeds a collision would ensue. It was for the jury to say in the circumstances of record where the imminent peril of the collision arose and whether thereafter plaintiff [584] in the exercise of the highest degree of care could have turned to his right along the curve of Mo. 6 and avoided the impending collision. Teague v. Plaza Express Co., 354 Mo. 582, 190 S. W. 2d 254, 256[3, 4]; Lilly v. Boswell, 362 Mo. 444, 242 S. W. 2d 73, 76 [5, 6]; Marczuk v. St. Louis Pub. Serv. Co., 355 Mo. 536, 196 S. W. 2d 1000, 1002[4]; Harrell v. Berberich, 359 Mo. 551, 222 S. W. 2d 733, 735[3-5]; Bowman v. Standard Oil Co., 350 Mo. 958, 169 S. W. 2d 385, 386[1-3]; Pennington v. Weis, supra. Yeaman v. Storms, 358 Mo. 774, 217 S. W. 2d 495, 498, cited by plaintiff, is distinguishable on the facts in that the imminent peril zone was very narrow, plaintiff having his car under control and able to stop in ten feet when he pressed on the accelerator to get across the point of impact ahead of defendant.

■ Mrs. Garrett, plaintiff's witness, testified that she was conscious at all times during the occurrence; that defendant's car. was swerving; that she put her arm up to keep from hitting the top of the car and laid a hand on her brother's shoulder to help hold herself. She described in detail what happened to Mr. and Mrs. Jones and herself, stating that her foot was caught between the seats and was nearly severed and the bone was under her brother's arm and penetrating his body, and that it was fifteen minutes by her watch before help arrived—Mr. Gnuse and a companion. They found defendant slumped over the wheel of his car and thought he was dead. They heard a woman, Mrs. Garrett, screaming in the other car and ran to it. Plaintiff offered to prove by Mr. Gnuse that Mrs. Garrett was screaming with pain; was very bloody; was repeatedly shouting: "He is dead"; was making frenzied prayers to God; was in a condition of physical and mental shock, and, mixed in with the screaming and praying, was repeatedly saying: "Why did he keep swerving." The offer of proof was refused.

Plaintiff's position is that the statement "why did he keep swerving" was admissible under the res gestae rule because the testimony of Mrs. Garrett established the nature and extent of her injuries and her condition of shock. Trial courts are privileged to exercise a reasonable discretion in determining whether hearsay testimony of statements made are admissible as a part of the res gestae. Moore v. St. Louis Pub. Serv. Co., Mo., 251 S. W. 2d 38, 40[1]. This may occasion what appears to be some conflict in holdings on the issue. In view of Mrs. Garrett's testimony that she did not lose consciousness, her detailed testimony covering the occurrence before and after the collision, and other factors, we are not prepared to say that the trial court committed reversible error in its ruling. As considered in Sconce v. Jones, 343 Mo. 362, 121 S. W. 2d 777, 782, after reviewing the authorities, we think the trial court might properly consider that plaintiff's evidence did not establish that Mrs. Garrett was under such influence of shock or pain as to be unable to reflect or reason after the accident so that the statement, when made, was the spontaneous utterance of thoughts created by or springing out of the event itself, or that they were the event speaking through Mrs. Garrett instead of Mrs. Garrett speaking about the event. Woods v. Southern R. Co., Mo., 73 S. W. 2d 374, 377[2-4]; Landau v. Travelers Ins. Co., 305 Mo. 563, 267 S. W. 376, 378.

The opinion need not be extended to develop other matters mentioned in the briefs. Some are sufficiently covered for the purposes of this review by what has been said and others are likely not to recur.

656

: The judgment is reversed and the cause is remanded. *Barrett* and *Stockard, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.