ADAM WARD, APPELLANT, v. FIRST NATIONAL BANK OF DEXTER, A CORPORATION, RESPONDENT.*

Springfield Court of Appeals. May 20, 1930.

*Corpus Juris-Cyc References: Banks and Banking, 7CJ, section 377, p. 670, n. 43; section 414, p. 686, n. 94; section 415, p. 687, n. 99; Trial, 38Cyc, p. 1604, n. 65; p. 1632, n. 10.

*C. A. Powell* for appellant.

*Wammack, Welborn & Cooper* for respondent.

SMITH, J.—This is an action in debt brought by Adam Ward, a depositor with the First National Bank of Dexter against said bank for the wrongful payment of checks drawn on the said First National Bank of Dexter, by Adam Ward and his son and agent, H. B. Ward, to various payees, which checks were never delivered to the payees named in said checks, the names of said payees being forged as endorsements on said checks, by the bookkeeper of the plaintiff, one J. G. Spears.

The petition was in two counts, the essential parts of the first count of said petition being as follows:

"For his cause of action plaintiff states that while he was a depositor with the said First National Bank of Dexter, he had money on deposit with, and an account with, said bank, in his name, subject to disbursement or withdrawal only upon due presentation of plaintiff's checks, executed by him or his agent, H. B. Ward, drawn upon the defendant bank, and demand for payment thereof made by the payee named in said checks, or the indorsees of said payees."

Then follows a description of thirty checks which were described by giving the date, the name of the payee, and the amount of each check, the first check being dated December 4, 1926, and the last check being dated July 9, 1927, with various amounts ranging from $10.47 to $148.90, the thirty checks totaling the amount of $1885.93, with the allegation that all of said checks were executed by the plaintiff, or his agent, H. B. Ward, and were drawn on the defendant bank, payable to the order of the payees therein named, but were never delivered to the payees named in the said checks.

The petition further states that:

"The names of the payees named in each of said checks were without the authority, knowledge or consent of plaintiff or said payees, wrongfully, unlawfully, and falsely forged on said checks, by one J. G. Spears and that all of said checks were deposited by him in and received by the Bank of Bell City, a banking institution in Bell City, Missouri, within a short time after the date of each of said checks; that within a reasonable time thereafter, all of said checks were then indorsed by the said Bank of Bell City, and forwarded to the First National Bank of St. Louis; that said checks were received by the said First National Bank of St. Louis, and indorsed by it, and forwarded to the defendant bank for payment, and that the defendant paid the amount called for in each check, in the said total sum of $1885.93, to the said First National Bank of St. Louis, and charged the account of the plaintiff with the amount of each of said checks, which said acts on the part of the

defendant were wrongful and illegal, and against the will and consent of the plaintiff.

"Plaintiff further states that as soon as he learned that the names of the payees named in said checks were forged, and that the defendant had wrongfully and illegally paid said checks out of his funds on deposit in said bank to other than the said named payees or their endorsees, and that the defendant had charged his account with the aggregate amount of said checks, that he at once notified the defendant that said payees' names had been forged on said checks, and on or about the 1st day of November, 1927, demanded of the defendant to repay him said sum, and that he has made several such demands on the defendant, but that the defendant nor any one for it has repaid said sum to plaintiff, and that it is all still due and unpaid.

"Wherefore, the premises considered, the plaintiff prays for judgment against the defendant on this the first count of his petition, in the said sum of $1885.93, together with interest thereon at the rate of six per cent since the time of the first demand made on defendant for said sum."

The second count of the petition alleged that on April 30, 1927, a check was signed by H. B. Ward, agent of plaintiff, payable to the order of Joe Farris, in the sum of eight dollars, drawn on defendant bank, but was never delivered to Joe Farris, but after its execution it was unlawfully and illegally altered by changing the amount of said check from $8 to $80 and the name of the payee forged thereon by J. G. Spears, and that the check was endorsed and deposited by Spears in the Bank of Bell City, and endorsed and forwarded by that bank to the First National Bank of St. Louis, and that bank received, endorsed, and forwarded it to the defendant, and the defendant paid the amount to the First National Bank of St. Louis, and charged the account of plaintiff with the amount of said forged and altered check.

The petition further states that as soon as the plaintiff learned that the name of said payee had been forged and that the amount of the check had been altered and that the defendant had wrongfully and illegally paid said check out of his funds and had charged his account with the amount of $80 he at once notified the defendant that the name of said payee was forged and the amount of said check altered, and on or about the 1st day of November, 1927, demanded of the defendant to repay him said sum and that the demand for payment was refused and he prayed for judgment against the defendant on the second count in the sum of $80 with interest since the time of the demand.

The defendant's answer admits its incorporation and that plaintiff was during the time of issuance and cashing of said checks, a customer and depositor with the defendant; that the said checks

were executed by the plaintiff or his agent; that H. B. Ward was the plaintiff's agent, and that the checks were endorsed and cashed and that the plaintiff's account was charged therewith, as alleged in the petition, and denied all the other allegations of the petition.

The answer further sets up that either the plaintiff or his agent negligently signed checks in blank and permitted J. G. Spears to fill them out and issue them, and thereby enabled the said Spears to issue and to put into circulation the checks mentioned, or that the plaintiff or his agent issued to the same party two checks for the same debt and entrusted the delivery of said checks to the payees to the said Spears, and issued the second one of such duplicate checks and gave it to Spears for delivery without first ascertaining whether or not the first checks issued had been destroyed, and that this was negligence on the part of plaintiff, which enabled Spears to put both checks into circulation and enabled him to collect on one of them, and the defendant alleged its lack of information as to which of the two above methods was employed in the case of said checks but alleged its belief in the last mentioned hypothesis.

The defendant further alleged in its answer that at the end of December, 1926, and at the end of each month thereafter during all the time the said checks were being handled, it sent to plaintiff a statement of the conditions of plaintiff's account with the defendant, which said statement had printed on it each time the following words: ''Statement of your account from —— to —— (Proper dates being filled in each time). Please examine at once.'' And that said statement showed each month each check charged against said account and the balance claimed by defendant to be due the plaintiff in said account at the end of each month, and that accompanying said statements were all cancelled checks which had been charged against said account during such month and included among these were the checks mentioned in plaintiff's petition.

The answer sets up that plaintiff had at no time made any objection to any of said statements or to any of said checks returned and charged against the same, and that each one of said statements constitutes a complete and binding statement of said account as between the plaintiff and defendant, and that the plaintiff cannot now claim that said statements are incorrect, or that the defendant was not entitled to the credit shown thereby, among which is credit for each of the checks upon which plaintiff seeks to recover in this case.

The answer further sets up that either the plaintiff was negligent in failing to examine said statements and returned checks or that he was negligent in failing to use due care in having said statements and cancelled checks examined, and that but for such negligence chargeable to the plaintiff, the plaintiff would have prevented and

discovered said forgery, and that by the negligence of the plaintiff pleaded in the answer the plaintiff is estopped to make claim for recovery against the defendant.

The answer sets up that the defendant cashed the checks without knowledge of any forgery and knew of no claims of said forgery until a year or more after the time of the cashing of the first check, and that the plaintiff upon discovering the forgeries and before proceeding against the defendant, proceeded against the said Spears, took over his property and has been paid the amount of the checks sued on or some portion thereof.

The plaintiff then filed a replication denying that any of the checks were signed in blank, admitting the rendering of the monthly statements and denying that the plaintiff from them learned of any forgeries, and alleging that plaintiff was personally acquainted with Spears, his bookkeeper, and had faith in his honesty and fidelity, and that he left the examination of his statements and cancelled checks up to Spears, and alleged that there was no agreement between plaintiff and defendant that the monthly statements should be considered or treated as accounts stated, and alleged that he proceeded against Spears and his property upon the discovery of the forgeries, and that he did not at that time know that he had any recourse against the defendant, and that he has never had a settlement with Spears for the amount of checks on which he forged endorsements, but that he did undertake to collect from Spears and that he collected from equities in personal property the reasonable value of $250, and that Spears had forged names of payees on checks drawn on other banks by plaintiff of more than $1000 making a total of forgeries aggregating about $3000, and that the plaintiff is willing to and does apply on the total amount of checks drawn on the defendant and described in plaintiff's petition, the sum of $200, the proportionate share of amount plaintiff has received from J. G. Spears, and that he endeavored to collect from said Spears before the defendant had knowledge of said forgeries, and that he was in a better position to collect from the said Spears than either the defendant, the Bank of Bell City, or the First National Bank of St. Louis, and that what he collected from Spears lessened the responsibility of the defendant, or either of the banks, and that neither the defendant nor anyone else could have collected any larger amount than the plaintiff collected from the said Spears, and that the defendant has not been damaged in any manner by the action of the plaintiff in making such collection from said Spears, and that the Bank of Bell City was negligent in cashing the said checks and that said bank guaranteed the endorsements and that the defendant has recourse against the Bank of Bell City, and the other endorsing bank, the First National Bank of St. Louis, and that the defendant had not been damaged by any failure of the

plaintiff to sooner discover the forgeries and disclose them to the defendant, and again prayed for judgment on the two counts in the sum of $1765.93, being the amount of said checks, after deducting the sum of $200, collected from Spears, together with interest at six per cent from the time of first demand.

The testimony of plaintiff tended to show the allegations in his petition, that is that he was a depositor in the defendant bank; that his son, H. B. Ward, was his agent and that J. G. Spears was his employee and had worked for him three or four years as bookkeeper prior to the time of the forgeries; that it was the duty of Spears to keep his books, to fill out all checks ready for signature, and examine the bank statements when returned to plaintiff; that he was willing to give a credit of $200 to plaintiff's account against the defendant on account of what he had collected from Spears; that his son, H. B. Ward had died since the forgeries, and that when he learned of the forgeries he undertook to collect from Spears and did collect in personal property about $250; that the total amount of the forgeries so perpetrated by Spears amounted to about $3000; that the amount of forgeries of checks against defendant was $1965.93.

There was not much controversy as to the testimony. The president of the defendant bank admitted that the checks were paid and charged against the account of plaintiff and admitted that the plaintiff spoke to him about the forgeries on or about the 1st of October, 1927.

We think this cause will have to be reversed and remanded on account of errors made in the instructions. Instruction No. 3, as requested by plaintiff, is as follows:

"The court instructs the jury that if you find and believe from the evidence that the First National Bank of Dexter paid the said checks mentioned in the evidence on the forged endorsements of the payees named in said checks that the defendant is liable to the plaintiff for the amount thereof, even though by the use of ordinary care the defendant could not have detected such forgeries. *A bank that pays a check on which the name of the payee has been forged, does so at its peril. It must know that the name of the payee is genuine at the time it pays said check.*" (Italics ours.)

The court modified the above instruction by striking out the italicized words in the said instruction and by adding the words "subject to the defense predicated in defendant's instruction," and gave the instruction in its modified form over the objection and exception of the plaintiff. While we think it was not error for the court to add the words which were added to said instruction, yet we think it was error to strike out the words "A bank that pays a check on which the name of the payee has been forged, does so at its peril. It must know that the name of the payee is genuine at

the time it pays said check." That a bank that pays a check on which the name of the payee has been forged does so at its peril is a proposition of law that cannot be controverted; even the defendant in its printed argument concedes this, but claims the bank is excused in this instance because of the lack of ordinary care on the part of the plaintiff in discovering and reporting the forgeries each month as the statements were received by the plaintiff. We think the jury were, under circumstances as here shown, entitled to know that a bank pays checks at its peril if the payee's endorsement is forged, for it is the bank's duty and not the maker's duty to determine the genuineness of such signature before payment. This is not a hardship on the bank, it is one of the reasonable considerations passing from the bank to the depositor for the use of his money so deposited, and we think it was unfair to the plaintiff for the court to not so advise the jury. In fact, the defense here does not deny that proposition of law, but claims to be excused from liability on account of the negligence of the plaintiff.

The plaintiff complains that instructions No. 3 given at the request of the defendant is error because it ignores the right of the depositor to entrust the examination of the bank statements and cancelled checks to his trusted bookkeeper, and conveys the impression that the bookkeeper's knowledge is that of the depositor, and does not state that where the bookkeeper is the forger that his knowledge is not to be imputed to the depositor. This instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff failed to use reasonable care and diligence in examining or having examined the statements of his account and the returned checks sent him by defendant and if you further find and believe in the evidence that if plaintiff had used reasonable care and diligence in making such examinations or in having same made, he would have discovered the forgeries complained of, then you are instructed that plaintiff is not entitled to recover and cannot recover from the defendant on any of the checks mentioned in evidence which were issued after such time as you may find, if you do so find, that plaintiff would by using care and diligence in making such examination or having the same made, have discovered the forgeries."

We think there is merit to the contention that the plaintiff had a right to rely upon his bookkeeper to a certain extent and that the bookkeeper's knowledge was not the knowledge of the depositor. [Kenneth Investment Co. v. Bank, 103 Mo. App. 615, 619, 77 S. W. 1002; 96 Mo. App. 125, 70 S. W. 173.] And we think this instruction is in conflict with plaintiff's instruction No. 2, which instructed the jury to find for the plaintiff under the terms therein expressed "un-

less the defendant proves by a preponderance of evidence that it has been or was specifically damaged because of such delay on the part of the plaintiff." Defendant's instruction No. 3 in effect tells the jury to find for the defendant if the plaintiff was negligent, without requiring the jury to further find that the defendant was damaged because of such negligence. Where instructions are so drawn as to be in conflict, error lies, although both of the instructions might be otherwise proper. [Seithel v. St. Louis Dairy Co., 300 S. W. 280.]

The appellant calls our attention to section 977, Revised Statutes 1919, which is as follows:

"No bank or trust company which has paid and charged to the account of a depositor any money on a forged or raised check issued in the name of said depositor shall be liable to said depositor for the amount paid thereon unless either (1) within one year after notice to said depositor that the vouchers representing payments charged to the account of said depositor for the period during which such payment was made are ready for delivery, or (2) in case no such notice has been given, within one year after the return to said depositor of the voucher representing such payment, said depositor shall notify the bank that the check so paid is forged or raised."

And says that under the provision of that section a depositor is allowed one year in which to notify a bank of forgeries after return to him of the vouchers by the bank, and cites an opinion of this court written by the writer of this opinion as authority for that position. The opinion referred to is Royal Indemnity Co. v. Poplar Bluff Trust Co., 20 S. W. (2d) 971, 974. If our language in that case is such as to convey the impression that we were holding that a depositor had twelve months in which to report such forgeries under all circumstances, our language was wrong, for it was not necessary to put such a construction upon the statute to determine that case.

We think this is a statute of limitation, the beneficial effects of which are for the bank, and does not in any way affect the duties of the depositor. It is a statutory provision that the bank may not be sued for payments under such forgeries unless the depositor discovers the forgeries and notifies the bank of such forgeries within twelve months after the return of the vouchers or within twelve months after notice that the vouchers are ready to be delivered to the depositor, and we think is not intended to permit the depositor to wait and take his time to notify the bank even though he has knowledge of the forgeries.

For the errors above mentioned the judgment should be reversed and remanded for another trial. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.