Raymond WISEMAN, Plaintiff-Appellant

v.

Troy JACKSON, Defendant-Respondent.

No. 7639.

Springfield Court of Appeals.

Missouri.

Jan. 22, 1958.

C. A. Powell, Dexter, for appellant.

Blanton & Blanton, Sikeston, for respondent.

McDOWELL, Judge.

This is an appeal by plaintiff from an adverse verdict and judgment rendered in the Circuit Court of Bollinger County, Missouri, in a suit for damages to recover $694.81 to his pickup truck.

The petition alleged that on June 25, 1955, plaintiff's pickup truck, driven by Russell Fish, north on State Highway 51, in Bollinger County, was damaged when forced off the road by a gasoline truck, owned by Sam McKee, and, at the time, driven by his agent, Troy Jackson. Three acts of primary negligence are relied upon for recovery: (1) That the accident was due to the negligence of Jackson in failing to drive the gasoline truck on the right side of the pavement and in driving the same on the left of the center of the pavement; (2) in failing to give a signal or warning of his intention to drive the gasoline truck on the left of the center of the pavement; and, (3) in failing to give the right-of-way to plaintiff after Fish had given a signal indicating his intention to pass.

The answer admitted the ownership of the gasoline truck as alleged and that Jackson was operating the same in the course of his employment as McKee's agent. It denied the acts of negligence on the part of Jackson and pleaded contributory negligence on the part of Fish as the agent of plaintiff. Under his general denial the defendant also took the position that the damage to appellant's truck was due solely to the negligence of Fish.

The evidence shows that on June 25, 1955, about 11:00 o'clock A.M., Russell Fish, Don Wiseman (son of plaintiff) and Harold Stiltz got into a 1952 Ford pickup truck (owned by plaintiff), with Fish driving, and started north on State Highway 51, a good two-lane blacktop highway, about 20 feet wide, going to Marble Hill and Cape Girardeau. Plaintiff's permission to use the truck was not asked for but the truck had been used on prior occasions by the boys and plaintiff had no objection to such use.

Fish was going to stop at the bank in Marble Hill on business for himself and father and Wiseman was going to Cape Girardeau to have his glasses repaired, where Fish and Stiltz were to buy some clothes. As they proceeded north on said highway, about four miles from plaintiff's store and just south of Zalma, they passed over the crest of a hill and observed a gasoline truck, driven by defendant-Jackson, 600 or 700 feet ahead of them going north.

Fish testified that as he proceeded along the highway he was driving about 55 miles per hour. He gave this testimony:

"Q. Did you gain on this truck, get up closer to it as you went over the hill? A. Well, I don't know, when I got up there —I mean I was went on a little and I saw the road was clear and I pulled over.

"Q. Yes. Now, in other words, before you pulled over though, had you gained on this truck, gasoline truck? A. I don't know. * * *

"Q. What did you do in connection with the operation of that truck you were driving, before you started to pull around this gasoline truck? A. Well, when I come over the hill, I slowed down a little bit for the hill and then when I come up, I seen the road was clear, so I pulled on over; I waited a little bit, went down, you know, went down the hill a little piece, pulled over and started around."

Witness stated that the pickup truck and the gasoline truck were traveling north on the right side of the road before he started to pass; that as quick as he pulled over in the left lane he blew the horn and was beginning to pick up a little speed to go past the gasoline truck, which was not traveling as fast as the pickup. He gave this testimony:

"Q. Now, had you, prior to the time you started around that truck, seen the car in front of it at any time? A. No, I didn't see it."

Witness gave this answer: "A. Well when I started around him, I blowed the horn before when I pulled over in the left hand lane, and I got up beside him and I blowed my horn again; I think I blowed it three times, and I blew and when I was right aside of him, as I started to come up, I blew it again and I just went in the ditch.

"Q. Now, where was the front of your truck, the one you were driving, with reference to his truck? On what part of his truck at the time you started to pull to the left? A. Where was my front then—of our truck?

"Q. Yes. A. Well, it would be about— about his door, I believe. I would be a sittin' across from the dual wheels. I figure that's about where I was, sittin' in the truck."

Witness said that he believed he was about even with the dual wheels of the truck when Jackson pulled over to the left hand lane; that he thought there was a dividing white line on the road. He said that the gasoline truck just pulled over when he was right at the side of it but that the trucks did not hit. He said he just kept

crowding over to the left, getting further over and went right into the ditch. He gave this testimony:

"Q. Why did you drive your car over to the left and into the ditch, * * * A. Well, he kept coming over; I didn't want to hit him."

Witness said he did not know whether the car turned end over end but that it came to a stand still on the right hand side. On cross-examination, he gave this testimony:

"Q. Now, how far is it from the top of the hill that you speak of down to the point where the accident occurred? * * * A. I imagine it's probably—oh, eight hundred feet, or something. I don't know, something like that."

He testified he did not know whether the truck got a foot or foot and a half over the white line or not or whether it pulled back over in the right lane of traffic. He gave this testimony:

"Q. Your car was skidding sideways, down the highway wasn't it? A. I don't know how it skidded, * * *

"Q. And it skidded for several hundred feet, didn't it? A. It skidded."

When asked how fast he was driving when he started around the oil truck, witness said "I was comin' up about fifty-five, and I was probably gaining a little speed when I started; I hadn't gained too much."

Witness said he did not know how far back of the oil truck his car was when he started to pull over to the left. He said the road was in good shape and no other cars were coming from either direction. He said defendant's truck had a tank on it which was used in delivering gasoline.

Harold Stiltz testified that he was 16 years of age and was riding in the middle, Fish driving and Donald Wiseman was on the outside. He testified that they had started to Cape Girardeau, but intended to stop at the bank in Lutesville; that their business was to shop for some clothes and Don was getting his glasses fixed. He stated they left plaintiff's store about 11:00 A.M., in plaintiff's pickup truck and were driving in the neighborhood of 50 miles per hour. As to the cause of the accident he gave this answer: "Well, we topped the hill there, and we started around, and he honked the horn before we started around him, and we started around him, and when we got up—well, about the back door of the pickup was even with his duals, why, he pulled over and he honked, I think it was, he honked again, and then that's all I remember. I mean, then we wrecked."

Witness said defendant's truck pulled over toward them and he thought it got over the center line of the road. He testified he got a glimpse of the Younger car just as they started around. He gave it, as his opinion, that it was about 600 or 700 feet from the top of the hill to where accident occurred at the bottom of the hill. He testified that he knew that defendant's truck got over enough to crowd them off the road.

Raymond Wiseman testified that he was in the merchandise business in Bollinger County and owner of the 1952 Ford pickup truck; that he saw the boys at the store before they started on the trip and that Russell Fish was driving when they left. He said they did not ask for the truck but he had no objection to them taking it; that his son, Don, took care of the truck and used it as his own; that he went to the scene after the accident and that the pickup was lying on its right side, on the left side of the highway, about four miles north from his store.

On cross-examination he was asked how far it was from the top of the hill to the point of the accident and said that it was not over 400 or 500 feet. He testified he saw the skid marks on the road made by the pickup.

Jackson admitted that he was operating the gasoline truck as agent of defendant, McKee; that at the time of the accident

he had started to pass the car in front of him and that in doing so he might have gotten over the white line a little bit, not over a foot or a foot and a half; that he did not know whether the rear wheels passed over the center line.

He testified that the gasoline truck was a straight truck, four ton and a half Ford with six wheels. He stated that the accident occurred at the foot of a grade or hill; that he was following a Chevrolet automobile, operated by one, Younger; that he followed it over the hill and down the grade to the north towards the point where the accident occurred. He said he was about 50 feet behind it and thought he was driving about 25 or 30 miles an hour; that he started to pass the car, and, at the time, the left side of the highway was perfectly clear of traffic; that the Younger car was traveling on the right side of the road. He gave this testimony: "Well, I got over I suppose, a little bit, to start around him. * * * I couldn't have got too far, maybe a foot or a foot and a half.

"Q. Then what did you do? A. Well, I heard this noise behind me, and I just pulled back over in my lane."

Witness said he imagined that the accident occurred before he had completely gotten his truck back in the right lane of traffic. He said he heard the pickup brakes applied, the squeal or squall of the application; that the accident occurred in the summertime, he had his windows down and did not hear any signal of a horn given by the pickup truck. He stated he did not see the pickup truck until it had turned over; that he would say he drove about 150 feet, stopped his truck on the right side of the road and that at that time the pickup was lying about half way up on the blacktop on its left side, the front end heading east.

Jackson stated his car was equipped with a light indicator showing when he was going to the left or right but that, in attempting to pass the Younger car, he did not use this indicator nor did he sound his horn

or give any signal at all. He gave this answer: "I didn't give any signal".

Sam McKee testified that he was the owner of the gasoline truck that Jackson was driving as his employee; that he went to the scene of accident and observed the skid marks on the road left by plaintiff's pickup, which were between 100 and 150 feet in length.

Elmer Younger testified for defendant that he is in the farming and stock business at Zalma and on the day of accident was driving north on Highway 51; that he first observed the gasoline truck following him on the south side of the hill. He stated his speed was 30 or 35 miles an hour; that as he started down the grade on the north side of the hill defendant's truck was about two or three car lengths behind him. He said he was watching defendant's truck through his mirror because he was driving slow and the truck started to pull out to pass. He gave it as his opinion that the truck started to pass about 125 yards from the top of the hill. He gave this testimony:

"Q. And at that time, could you see his truck clearly in your rear view mirror? A. I was using the side view, sir."

Witness said that the front end of the truck was partly over the center line, he would say about half way out. He said that at the instant defendant's truck swung out to go around, he heard tires squeal. He gave this testimony:

"Q. And what, if anything, did the truck do then? A. He swung back to his right."

Witness said that at the instant the truck swung its nose back into the right lane of traffic he saw this pickup truck coming in sideways; that it was quite a way behind the defendant's truck; that he would say 25 to 30 yards. He said at the time he observed it the nose was headed west and that it was in the left lane of traffic.

Witness said he had the windows down on his car and he did not hear the horn

blow on the pickup truck. He gave this answer: "When I saw him, he was coming sideways with his nose facing west; he continued coming down that way until he glanced the bank with the nose of it. That turned the truck oppositely, east, and then rolled over."

He said he stopped his car about 60 yards ahead of the pickup and went back to where it was resting between the ditch and the road, on its side. He said that at the time he observed the pickup truck it was about 40 or 50 yards behind.

In our opinion we will refer to the appellant as plaintiff and to the respondent as defendant.

Plaintiff dismissed as to defendant, Sam McKee, and proceeded against defendant, Troy Jackson.

██ Plaintiff's first allegation of error is leveled at defendant's instruction No. (A), a sole cause instruction. It is contended that the instruction is erroneous because it ignored plaintiff's theory of the case which is grounded on § 304.016 V.A.M.S.; that is, that plaintiff had the legal right to pass the truck driven by defendant when overtaking it and sounding his horn. The instruction complained of reads:

"The court instructs the jury that it is the duty of the driver of a motor vehicle following another motor vehicle to keep his automobile under such control so that he would not run into the motor vehicle ahead should it slow down or change its direction, and to keep his motor vehicle a sufficient distance behind the motor vehicle in front of him so as to avoid danger in case of sudden change of direction of the motor vehicle ahead.

"You are further instructed that if you find from the evidence that at the time and place in question, Russell Wayne Fish, did not exercise the highest degree of care in keeping the plaintiff's "pickup truck under such control so that he would not run into the ditch to avoid striking the

defendant's oil truck, if said truck slowed down or undertook to pass on the left side of the Younger car, or if you further find that the said Russell Wayne Fish, did not exercise the highest degree of care to keep the plaintiff's pickup truck a sufficient distance behind the oil truck of the defendant, so as to enable him to avoid running into the ditch if the defendant's oil truck slowed down or undertook to pass the Younger car in front of said oil truck, or if you find from the evidence that Russell Wayne Fish was operating the plaintiff's pickup truck at said time and place at a high, excessive and dangerous rate of speed under the circumstances then present, and if you further find that such conduct on the part of the said Russell Wayne Fish, if any, was negligent and that such negligence was the sole cause of the damage to the plaintiff's pickup truck and that the defendant Jackson was not guilty of any negligence directly contributing to cause the damages to said pickup truck as set out in other instructions, then you are instructed that the plaintiff cannot recover and your verdict must be in favor of the defendant."

We agree with plaintiff that this instruction is erroneous. It submits to the jury matters not supported by evidence and on issues which are not involved in the case.

The first part of the instruction sets out the duties of plaintiff under section 304.017 V.A.M.S. which relates to the distance at which vehicles must follow other vehicles going in the same direction. This section provides that "The driver of a vehicle * * * shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway. * * *" There is no evidence touching plaintiff's duties under this section of the statute.

Plaintiff's action and the theory presented under his main instruction is grounded on

section 304.016 V.A.M.S. which relates to passing regulations and, in part, reads as follows: "The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated:

"(1) An operator or driver overtaking and desiring to pass a vehicle shall sound horn before starting to pass except in cities where prohibited by ordinance.

"(2) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle. * * *

"(6) The provisions of this subsection shall not relieve the driver of a slow-moving vehicle from the duty to drive as closely as practicable to the right-hand edge of the roadway. * * *"

It was held in Dawson v. Scherff, Mo. Sup., 281 S.W.2d 825, 829, that "The essential facts for determination by the jury were: Did plaintiff overtake and attempt to pass defendant's truck? Was the way ahead clear of approaching traffic and the roadway of sufficient width to permit his passage to the left of the center thereof? Did plaintiff sound his signalling device? Did defendant's operator, upon signal, promptly turn his vehicle as far as reasonably possible to the right in order to allow plaintiff free passage? If, through negligence, he did not keep his vehicle to the right, did his failure to do so cause plaintiff to drive into the abutment?"

This law was declared under the same statute upon which plaintiff bases his cause of action in the instant case. We think the evidence offered by plaintiff was sufficient from which the jury might have found for the plaintiff. However, defendant was entitled to have his theory of the case submitted to the jury, that is that the driver of plaintiff's car was negligent and that that negligence was the sole cause

of the injury. However, he was not justified in submitting matters to the jury in a sole cause instruction which were not supported by evidence and which the jury would not have been justified in finding.

In Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642, 650(13) the court stated this law:

"Defendant Connell, plaintiff's host, asserts error resulting from the refusal of the trial court to give an instruction authorizing the finding that the negligence of defendant Thomas was the sole cause of plaintiff's injury. To be entitled to such an instruction, a defendant must present a statement of facts, supported by the evidence, which if found by the jury would authorize findings absolving him of fault and that the plaintiff, a third person, or another defendant was at fault. Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Long v. Mild, 347 Mo. 1002, 149 S.W. 2d 853. We look to the evidence, and the reasonable inferences favorable to defendant Connell, to determine if there was sufficient proof to warrant the giving of a sole cause instruction in his behalf. Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254. * * *"

We are not holding that there was not sufficient evidence in the case to support a sole cause instruction, but we are holding that the law stated in this instruction did ignore the theory in plaintiff's case and was not supported by evidence and we hold that this constitutes reversible error. We think it unnecessary to go into all of the authorities cited by plaintiff under this allegation of error relating to contributory negligence.

■ We agree with plaintiff's second contention that instruction (A), given for defendant, conflicts with instruction P–2, plaintiff's main instruction.

This instruction submits plaintiff's theory of the case under section 304.016 V.A. M.S., relating to regulations of passing

motor vehicles. The essential elements required are as set out in Dawson v. Scheriff, supra. Defendant's instruction (A), in part. at least, is based upon § 304.017 V.A.M.S., relating to distance at which motor vehicles must follow other motor vehicles on the highway. It permitted the jury to find against plaintiff for acts of negligence not in issue and on facts that did not warrant such finding under the law. Gaines v. Property Servicing Co., Mo.Sup., 276 S.W.2d 169, 175(11); Seithel v. St. Louis Dairy Co., Mo.Sup., 300 S.W. 280; Ward v. First National Bank of Dexter, 224 Mo. App. 472, 27 S.W.2d 1066.

 It is contended that the giving of this instruction was error because there was no evidence to sustain a sole cause instruction.

In Bunch v. Mueller, 365 Mo. 494, 284 S.W.2d 440, 444(8) it was stated:

"Appellant contends that the court erred in giving Instruction No. 5, 'for the reason (a) that the factual situation precluded a sole cause defense; and (b) that as a result thereof the instruction did not and could not hypothesize a set of facts justifying a sole cause defense.' Of course there must be facts in evidence which will sustain a sole cause defense before a defendant may properly have a sole cause instruction. Johnson v. Cox, Mo.Sup., 262 S.W.2d 13, 16; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, 896; Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 860. In other words, the evidence must be such that the sole cause instruction may hypothesize a sufficient state of facts and circumstances to necessarily exclude the defendant's humanitarian negligence as a possible concurring cause of plaintiff's injury by demonstrating that defendant was free from such negligence and showing that plaintiff's conduct was the sole cause."

There was a general denial of plaintiff's allegation of negligence on the part of defendant and the allegation that such neg-

ligence caused the injury. That was sufficient on which to base a sole cause instruction. A sole cause defense is not an affirmative defense and plaintiff has burden of proof on issue of negligence. Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853.

It was held in Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, 64(6) that a sole cause instruction may be based upon defendant's evidence. The court stated: " * * * We think a defendant does all that should be required of him if he properly hypothesizes facts (based on his evidence) showing a sole cause situation, requires a finding therefrom of sole cause and of his freedom from any negligence charged against him. We, therefore, think it is proper to leave such statements for plaintiff to request if he desires the jury to have them and so rule. * * *"

In the instant case there was evidence on the part of the defendant from which the jury might have found that the plaintiff failed to sound his horn when he attempted to pass the defendant's truck. There was evidence that the jury could have found that plaintiff was driving at an excessive rate of speed in that the car skidded some 100 or 150 feet and in that the distance traveled under plaintiff's evidence, was such as to justify a finding that the accident was due to high and excessive speed in overtaking defendant's truck, and the fact that defendant did cross the center line a foot or a foot and a half was not such negligence as would require the plaintiff to drive off the road into a ditch when the paved part of the road was 20 feet wide, and the jury could have found there was ample room for him to pass under defendant's evidence. We think that a sole cause instruction might have been properly submitted and we find against plaintiff on this issue.

 We, likewise, find against plaintiff on the contention that defendant's testimony shows that he was negligent per se and as

a matter of law in turning across the center of the pavement.

■ We agree with the law, cited by plaintiff, that where the evidence shows the defendant is guilty of negligence as a matter of law, a sole cause instruction should not be given. Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 121; Weis v. Melvin, Mo.Sup., 219 S.W.2d 310; Johnson v. Cox, Mo.Sup., 262 S.W.2d 13.

■ Plaintiff's contention that the first paragraph in Instruction No. (A) is an abstract statement of law, is confusing and misleading and tends to convey to the jury the impression that the driver of plaintiff's truck had to keep it behind the gasoline truck and could not pass it, is well taken. Detrich v. Mercantile Trust Co., Mo.Sup., 292 S.W.2d 300, 303(6–7); Patterson v. Thompson, Mo.App., 277 S.W.2d 314.

It is unnecessary to pass upon the allegation of error designated (F). We think we have sufficiently covered this alleged error.

■ Error is assigned as to the giving of Instruction (B). It is contended that this instruction ignores the issue that the driver of plaintiff's truck had the legal right to pass defendant on the left upon overtaking him and sounding his horn.

Instruction No. (B) reads as follows: "The Court instructs the jury that under the law of Missouri, it is the duty of a driver of an automobile following another automobile traveling in the same direction to operate his automobile in such a position, and to have it under such control, as to be able to stop or take other appropriate measures to prevent running his automobile into a ditch in case the car ahead, for any reason, turns to the left in front of the rear car.

"You are therefore instructed that if you find and believe from the evidence that at the time and place mentioned in the evi-dence, the defendant, Jackson, was operating an oil truck belonging to the defendant, McKee, and at said time and place was following an automobile being driven by one Elmer Younger and further find that as the defendant Jackson started to drive the McKee oil truck to the left and around the automobile being driven by Younger, and that at the said time and place, the left hand lane ahead was clear of oncoming traffic, and further find and believe from the evidence that Russell Wayne Fish was driving a pickup truck belonging to the plaintiff, Raymond Wiseman, and was operating said Wiseman pickup truck in such a position and in such a manner that he did not have it under such control as to enable him, the said Russell Wayne Fish, to stop the said Wiseman pickup truck, or take other appropriate measures to prevent running said Wiseman pickup truck into the ditch and causing it to turn over, if you so find, then you are instructed that the said Russell Wayne Fish was guilty of negligence in so operating the said Raymond Wiseman pickup truck."

We think the first paragraph of this instruction is an abstract proposition of law not supported by the evidence. It is true that under the law, plaintiff, in order to recover, must at all times operate his automobile with the highest degree of care. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; § 304.010 RSMo 1949, V.A.M.S.; Burlingame v. Landis, 362 Mo. 523, 242 S.W. 2d 578, 580.

This paragraph tells the jury that under the law plaintiff's pickup truck, following defendant's gasoline truck, must have been under such control and so operated as to prevent running into a ditch in case the gasoline truck, for any reason, turned to the left in front of said pickup truck. The jury was misled as to their duty under the evidence in the case. The issue to be decided by the jury under the evidence was whether or not the defendant's truck was negligent in turning to the left over the center line of said road while plaintiff's truck was passing it after having overtaken

the same and sounded its horn with intention to pass and whether such negligence, on the part of defendant's truck, if any, contributed to the injury or whether or not the driver of plaintiff's truck was negligent and that such negligence was the sole cause of the injury.

We agree with plaintiff's contention that the giving of this instruction was error because it wholly disregards plaintiff's theory of the case.

We think that plaintiff's contention that under this instruction, the jury might well have been led to believe that the driver of plaintiff's truck must anticipate defendant might turn to the left and that if he did turn to the left for any reason, the driver of plaintiff's truck must have had his truck under such control as to have stopped the same without causing any damage.

To sustain the correctness of this instruction defendant cited Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, 919, 920. This was a damage action for personal injuries based upon negligence of the defendant in running into the rear of plaintiff's automobile. On page 919 of 164 S.W. 2d of the opinion, the court stated:

"* * * There is also another well settled principle concerning instructions which is applicable here. That is: If an instruction requires the jury to find facts which if true could only mean that the defendant was guilty of negligence per se or as a matter of law, then the instruction is good even if it does not require the jury to find that such facts constitute negligence, because 'the law draws the conclusion in such cases'; or in other words, the only remaining question for the jury (if it finds such facts) is proximate cause. Swain v. Anders [349 Mo. 963], 163 S.W.2d 1045, * * * citing 1 Raymond-Instructions 15, Sec. 5; * * *"

The evidence in the instant case would not have justified the court in instructing the jury that plaintiff's driver was guilty of negligence as a matter of law. We think there might have been a question of negligence on the part of such driver to have been determined by the jury. Dodson v. Gate City Oil Co., Mo.Sup., 88 S.W.2d 866, 873 stated the law that if from a reading of the instruction it appears that the jury was required to find facts constituting negligence, and then proceed to enumerate the facts to be found, it is not necessary that the instruction find that such facts constitute negligence; that the law draws that conclusion.

■ We think it unnecessary to go into the other authorities, cited by the defendant under this allegation of error, but we do call attention that defendant, again, cites, as authority, § 304.017 V.A.M.S. This section of the statute pertains to the law governing the duty of a motorist operating his car on the highway following other traffic. It does not pertain to the law that governs the action in the instant case, to-wit, where an automobile desires to pass another automobile going in the same direction. Instruction No. (B) in telling the jury the law governing the duty of the defendant may be objectionable for following that theory of the case. At any rate, this is not a jury directing verdict and, since the cause must be retried, we find that this instruction is erroneous and should not be given on a retrial of the case.

Plaintiff complains of instruction No. (C), a sole cause instruction. The first alleged error is that the instruction is not supported by evidence which would sustain a sole cause instruction.

■ In our opinion we have discussed what is necessary to warrant the giving of a sole cause instruction. To be entitled to such instruction, defendant must present a statement of facts, supported by evidence, which, if found by the jury would authorize finding absolving him of fault and that the plaintiff was at fault. (See authorities cited under the first allegation of error.)

It was held in Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254, that we look to the evidence and the reasonable inferences favorable to the defendant to determine if there was sufficient proof to warrant the giving of a sole cause instruction.

Under the evidence in the instant case we think that if the jury believed the evidence of the defendant sufficient proof was offered to justify the giving of a sole cause instruction. However, we do not think the present instruction is proper as it refers to instructions (A) and (B). We did not approve instruction (A) and, since this cause must be tried again, this instruction should be restated, if given.

The next objection to this instruction is that it was error because defendant's own testimony shows him to have been guilty of negligence as a matter of law. With this contention we do not agree.

It is contended by plaintiff that instruction No. (D), given for defendant on contributory negligence, was error because, first, it authorized a verdict for defendant if the jury found that the driver of plaintiff's truck was negligent without requiring such negligence on the part of the driver of plaintiff's truck to be the cause or contributing cause of the damage to such truck.

We are of the opinion that there was no evidence upon which to base this instruction and the same should not have been given. Mulanix v. Reeves, 233 Mo. App. 143, 112 S.W.2d 100; Johnson v. Thompson, Mo.App , 236 S.W.2d 1; Levin v. Caldwell, Mo.Sup., 285 S.W.2d 655, 659.

Cause reversed and remanded for new trial.

STONE, P. J., concurs in the result.

RUARK, J., concurs.