**Earl E. HOEHN, Plaintiff-Respondent,**

v.

**Henry Lee HAMPTON, Defendant-Appellant.**

**No. 34211.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 11, 1972.

Harlan & Harlan, John L. Harlan, Jr., Clayton, for defendant-appellant.

Koenig, Dietz, Hermann & Abels, Thomas B. Maue, St. Louis, for plaintiff-respondent.

SIMEONE, Judge.

In this action for personal injuries occasioned by an automobile collision, the jury found in favor of the defendant, Henry Lee Hampton. The trial court thereafter sustained plaintiff Earl E. Hoehn's motion for a new trial and ordered the cause reinstated upon the docket for further proceedings. From the order granting plaintiff Hoehn a new trial, defendant Hampton appeals.

On November 12, 1965, Hoehn was involved in a collision at the intersection of Highway 54 and Old Highway 40, near Kingdom City, Missouri. He was a passenger in an automobile owned by Calgon Corporation and driven by William E. Pfeiffer. On November 30, 1967, Hoehn filed his petition against Hampton and Calgon Corporation, but subsequently dismissed the petition against Calgon. Trial was held in March, 1971.

Pfeiffer was Hoehn's "boss" and district sales manager of Calgon. They had left St. Louis on the morning of November 12, about seven a. m., drove to Mexico, Missouri where they visited two accounts and were on their way to Fulton when the col-

lision occurred. It was a clear day, the weather was good, and the streets were dry. Hoehn and Pfeiffer were riding in a 1965 Ford station wagon. Hampton, a farmer, owned and drove a 1962 Ford pick-up one-half ton truck with a six foot bed.

At or near the intersection of Highway 54 and Old Highway 40, Highway 54 runs north and south and consists of two lanes for northbound traffic and two lanes for southbound traffic. The concrete highway has pavement 25 feet wide. Highway 40 at the time of the collision, was a two lane highway running east and west. Highway 54 was separated by a grassy strip median 40 feet wide between the north and southbound lanes of the highway. The intersection is a four-way intersection. At that intersection there were business places, filling stations, a restaurant and a highway patrol weight station. There was a 15 foot shoulder on each side of the southbound lanes of Highway 54, and a "yield" sign on Highway 40 at a point immediately east of the southbound lanes of Highway 54. At the intersection the land is flat but Highway 54 rises to a crest some 600–700 feet north. At each of the north and southbound lanes of Highway 54 at the intersection, there is an overhanging flashing light for both directions. It was referred to as a "red flashing light." The impact occurred in the outside southbound lane of Highway 54.

Hampton had been driving north on the northbound lane of Highway 54 and had picked up a hitchhiker. He let him off at Old Highway 40, after pulling off on the shoulder and coming to a dead stop. He pulled back onto Highway 54 and turned left, or west, onto Highway 40. He proceeded west on 40, entered the median which was about 40 feet wide, and at a point about half way into the median, or 20 feet from the inside southbound lane, he looked to the right (north) and saw no traffic coming south on Highway 54. He

could see to the crest of the hill about 600–700 feet but was not sure he looked that far. He proceeded into Highway 54 at about 10–15 miles per hour. When he looked again, the Pfeiffer vehicle was "right on me." Pfeiffer's automobile was proceeding south at about 60–70 miles per hour. Hoehn, the passenger in Pfeiffer's car felt an application of the brakes at a point 50 feet from the intersection. Hoehn testified that Hampton was moving "very slow" about "5 to 10 miles an hour." The first time Hoehn saw Hampton's pick-up truck from the intersection was about 30 car lengths or approximately 500 feet. The crest of the hill was "high enough that it would cover an object, an automobile coming southbound." Hoehn testified that Hampton traveled "30, 40, maybe 50 feet" before the impact occurred at a speed of "5 to 10 miles an hour," and that their vehicle traveled 500 feet while Hampton's vehicle went about 50 feet.

As stated, the impact occurred in the outside southbound lane of Highway 54. Hampton's truck completely crossed the inside southbound lane and the front wheels had completely crossed the curb lane of southbound Highway 54. The Hoehn station wagon hit the truck around the back wheels. The bed of the truck was in the outside southbound lane when it was hit. Hampton's truck was damaged behind the passenger's door and the back bed, most of the damage being over the right rear wheel. Hampton looked at the highway after the collision and saw no skid marks.

The court instructed the jury on a failure to keep a careful lookout or failure to yield the right-of-way. Instruction No. 2 also read "When a vehicle is about to enter a through highway from an intersecting highway and another vehicle on the through highway is so close as to constitute an immediate hazard, the vehicle on the through highway has the right of way." During the closing argument, counsel for defendant (Mr. Harlan) made a number of references to Mr. Pfeiffer's conduct

in driving the station wagon. Counsel's comments during the argument included the following:

"Now, let us look at the facts a little more clearly. The facts are that Mr. Hampton came up to that intersection and he looked all the way to the crest of that hill. He saw nothing. In accordance with this Instruction No. 2, when you get up there in the Jury Room, if you'll read it, you'll see where it says when a vehicle's about to enter a through highway from an intersecting highway another vehicle on the through highway is so close as to constitute an immediate hazard, an immediate hazard. There was no immediate hazard when Mr. Hampton started his '62 Ford pick-up truck across that highway. There was a flashing red light. This is very important. There was a flashing red light for Mr. Pfeiffer, and in spite of that red light he barrelled through that intersection at 60 to 70 miles an hour.

"MR. MAUE: (counsel for plaintiff-Hoehn) Your Honor, I am going to object to that. There is no issue on Mr. Pfeiffer's negligence, if any, in this matter.

"MR. HARLAN: I am not alleging any negligence.

"MR. MAUE: Yes, you are.

"THE COURT: Well, he's trying to obviate the negligence of the Defendant by —in other words, he's taken the position the Defendant wasn't negligent. I'm not going to comment. I will overrule the objection. Go ahead.

"MR. HARLAN: Thank you. Your Honor. Anyway, this is what happened. And where did he hit him? He hit him on the right rear. There's no other southbound cars on that dual lane. There are no skid marks. There was no squalling (sic) of brakes. There was nothing. He just simply ran into the back end of this car when by a simple turn of the wheel the whole thing could have been avoided.

&ast; &ast; &ast; &ast; &ast; &ast;

"You also recall yesterday that we were talking about speeds and how far vehicles traveled. Mr. Hoehn admitted himself that he saw that car, that truck, 30 car lengths away, or approximately 500 feet, and he testified that Mr. Hampton drove his car approximately 50 feet from the time he saw him until the time it happened. In other words, the Pfeiffer car was driving ten times as fast as Mr. Hampton's car but, see, the immediate hazard was not present as outlined in the Court's instruction No. 2 because there was no immediate hazard when Mr. Hampton started across the road. After all, everybody has a right to use the road and it is plainly evident that we crossed that intersection and was into the intersection long before the Pfeiffer car got there, but for some reason Mr. Pfeiffer just moved right on down the highway, didn't apply his brakes, didn't sound his horn, didn't swerve, but just simply ran into the back end of our car, and as Mr. Hampton has testified, the front end of his car was already off the highway when the impact occurred.

"Now what do we have around this intersection? You heard Mr. Hampton describe this morning, there's seven filling stations, there is a Highway Patrol Weight Station. That's what is there, plus a flashing red light for the car in which Mr. Hoehn was riding. Now, that flashing red light was there for a purpose. It was there for a reason, and the reason it was there is to avoid what happened that particular November 12, 1965. Ladies and gentlemen, I want you to carefully read when you get up to your room Instruction No. 3, 'Your verdict must be for the Defendant on the Plaintiff's claim for damages unless you believe the Defendant was negligent as submitted in Instruction No. 2' and listen to this, 'and that Plaintiff sustained damage as a direct result thereof.'

&ast; &ast; &ast; &ast; &ast; &ast;

"Now, another interesting point, Mr. Hoehn testified that Mr. Pfeiffer never applied his brakes until he was 100 feet away. That was the first time he applied his brakes. He had at least five or 600 feet to observe that pick-up truck when

they came over the crest of the hill. The reason that Mr. Hampton didn't see that fast moving brand new '65 Ford station wagon is because it was over the crest of the hill and at 60 miles an hour a car is moving 88 feet a second. You can figure it out, so you can figure he had plenty of time to just simply put on his brakes and slow down and hold and the whole thing could have been avoided.

"But I think the most important thing of all is for you to remember that the Court does not instruct you for any money award for this Plaintiff in Instruction No. 2 unless you believe that the Defendant was negligent and that he was injured as a direct result. Unless you find those two things you should bring a verdict back in favor of the Defendant, and this is what we're going to ask you to do.

\*　　\*　　\*　　\*　　\*　　\*

"Now, I want you to bear in mind the red light, the fact that he was under no obligation to yield unless there was immediate hazard which there wasn't. . . . When you consider all of these facts and the fact that we were slammed into in the right rear end when part of the truck was off the highway, I don't think you'll have any difficulty in returning a verdict in favor of the Defendant . . ."

The jury subsequently found in favor of the defendant, Hampton. After Hoehn filed a motion for judgment notwithstanding the verdict or in the alternative a motion for new trial, the court granted a new trial on the ground that "The Court erred in permitting counsel for Defendant over Plaintiff's objection to argue that the sole cause of the collision was the negligence of the driver of the automobile in which Plaintiff was riding."

The appellant-Hampton contends that the trial court erred in granting plaintiff a new trial, urging that the defendant's argument was a legitimate comment on the evidence and that even if the argument was a sole cause argument there was no error in making the argument. The respondent-

Hoehn, on the other hand, contends that the trial court properly granted a new trial because "sole" cause was not supported by the evidence and the trial court properly exercised its discretion in granting a new trial.

When a motion for new trial is filed containing a number of grounds and the trial court sustains the motion on a specified ground, the presumption is that all the grounds not so specified are overruled. State ex rel. Spears v. Hughes, 346 Mo. 421, 142 S.W.2d 3 [2–3]; Civil Rule 78.01, V.A.M.R.; Williams v. Kaestner, Mo.App., 332 S.W.2d 21 [2, 4]; Porter v. Chicago, B. and Q. R. Co., 325 Mo. 381, 28 S.W.2d 1035; Kirst v. Clarkson Construction Co., Mo.App., 395 S.W.2d 487. When an order for new trial is granted for a specific reason, the appellant need show only error in granting it for such reason, and if other grounds are relied on to sustain it, the respondent must call the court's attention thereto, or they will not be considered. "The purpose of this rule is salutary. It sharpens the issues in enabling the appellant to directly combat the ruling of the trial court, and limits the review, upon appeal, to the reasons for such ruling instead of requiring a consideration of all the issues raised during the trial." City of Kennett v. Katz Const. Co., 273 Mo. 279, 202 S.W. 558, 1. c. 560. We limit ourselves, therefore, to the point whether the trial court erred in granting a new trial on the ground referred to supra. In deciding the question we are to consider the evidence in the light most favorable to the prevailing party below and give him the benefit of all reasonable inferences to be drawn from the evidence disregarding the plaintiff's evidence unless it tends to support defendant's defense. Moore v. Parks, Mo.Sup., 458 S.W.2d 344; Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131; Wiseman v. Jackson, Mo.App., 309 S.W.2d 356.

The evidence most favorable to the defendant shows that Highway 54 southbound was a two lane highway, 25 feet wide and that Hampton, when at a point

approximately 20 feet from the inside southbound lane of Highway 54, and while traveling at a speed of 5–10 m. p. h. as testified to by the plaintiff, or 10–15 m. p. h. as testified to by Hampton, he (Hampton) looked to the north and could see to the crest of the hill approximately 600–700 feet north of the intersection, although he is not sure he looked that far. Hampton continued forward without ever looking again to his right for southbound traffic until immediately before the impact at which time the southbound station wagon was only 10 or 15 feet from him, or as he put it, "It was right on me." There is evidence that the Pfeiffer automobile was traveling 60–70 m. p. h. The jury could reasonably believe that when Hampton looked to the north and proceeded into the southbound Highway 54 he saw no traffic and was not negligent in proceeding forward. Defendant's counsel argued that at the time Hampton proceeded to cross the southbound lanes there was no immediate hazard and the jury could believe at that time there was none. He argued that Pfeiffer must have moved right down the highway and that the "flashing red light" was there for a purpose. He argued that the reason Mr. Hampton didn't see the car was because it was over the crest of the hill.

 Counsel was commenting in argument on the evidence for the jury's consideration. The permissible field of argument is a broad one, and as long as counsel confines himself to the evidence and does not go beyond the issues and urge prejudicial matters or urge a claim or defense which the evidence does not justify, he is to be given wide latitude in his comments. Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807; Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 257 S.W.2d 643. Defendant's counsel in argument has the right to argue his non-negligence and that the plaintiff's injuries were not caused by the direct result of the alleged negligence of the defendant. Instruction No. 2 authorized a verdict for the plaintiff only if the defendant's conduct directly caused the plaintiff's injuries. The thrust of the argument was the non-negligence of the defendant although presented in an affirmative manner. The argument was supported by the evidence.

Respondent-Hoehn urges, however, that the trial court did not err in granting a new trial because defendant's counsel erroneously argued "sole cause." Hoehn admits that under a general denial a defendant is entitled to adduce evidence to the effect that the collision was not the result of defendant's negligence but resulted solely from the negligence of Pfeiffer. Respondent also agrees that with the advent of MAI the sole cause defense remains and is available to defendant even though a sole cause instruction can no longer be given. But respondent contends that "all of this" presupposes that there is substantial evidence showing a true sole cause situation, i. e., that the collision resulted solely from the negligence of Pfeiffer in the operation of the station wagon and if the defendant's evidence shows that he is negligent, he is in no position to "urge or argue" that the collision occurred solely from someone else's negligence. He contends, therefore, that before the defendant is entitled to argue that the collision resulted solely from Pfeiffer's negligence there must be substantial evidence of a sole cause situation and if the defendant's evidence shows that he is negligent an argument that the negligence of a third person directly caused the plaintiff's injuries cannot be made.

 We believe that the defendant made a proper argument under the circumstances here. Prior to the adoption of MAI, the sole cause instruction had a steady demise. Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Wiseman v. Jackson, Mo.App., 309 S.W.2d 356. Sole cause instructions are now prohibited by MAI. Johnson v. Harrington, Mo.App., 443 S. W.2d 1. MAI 1.03 states that "No instruction shall be given on behalf of the defend-

ant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence." The Committee's comment states that there are three reasons for this restriction. Such instructions are confusing and misleading and the prescribed converse forms adequately present the same defense. Even though the instruction has been abolished, the defense remains and MAI has not changed the law on the admissibility of evidence tending to establish that one is not negligent. Birmingham v. Smith, Mo.Sup., 420 S.W.2d 514. Under *Birmingham* the defendant may introduce any evidence which tends to establish that the defendant is not guilty of the negligence charged. "This is true also where such evidence from a defendant may be in the nature of sole cause in which case he may, if he chooses, introduce evidence because 'sole cause is not an affirmative defense and plaintiff has the burden of proof on the issue of defendant's negligence. . . .'" Birmingham v. Smith, *supra*, 1. c. 516.

██ If the defense remains, if the defendant is permitted to introduce evidence which is inconsistent with the allegations of the petition, whether the evidence is negative or affirmative, he should be free to argue the evidence before the jury unless the defendant's evidence shows that he is negligent as a matter of law. A party is entitled to argue all the evidence presented for the determination by the jury. The evidence of the defendant may be purely negative (non-negligence of the defendant) or affirmative (another's negligence was the cause of the injury). All of the evidence is for the jury to determine, and unless the defendant's evidence shows him to be negligent as a matter of law, the issues are for the jury.

██ Here we cannot say that, as a matter of law, Hampton's testimony showed him guilty of such negligence as in Wilkins v. Stuecken, 359 Mo. 1047, 225 S. W.2d 131; Roux v. Pettus, Mo.App., 293 S.W.2d 144; and Weis v. Melvin, Mo.Sup.,

219 S.W.2d 310. It is true that where one is charged with the duty to look, a failure to observe what is plainly visible constitutes negligence as a matter of law. But under the evidence here, the jury could conclude that Pfeiffer's automobile may not have been plainly visible at the time defendant proceeded into the intersection of Highway 54 and Old Highway 40 because of the crest of the hill.

It is true that under the practice prior to MAI, before a defendant was entitled to a sole cause instruction, the defendant must present a statement of facts supported by the evidence which would absolve him of fault and which would show that the plaintiff or a third person was at fault. Wiseman v. Jackson, *supra*; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Semar v. Kelly, *supra*; Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853. If the evidence of the defendant showed that the defendant was negligent as a matter of law such instructions were error. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; Wilkins v. Stuecken, *supra*. But these decisions dealt with instructions and the form of such instructions to guide the jury. With the demise of sole cause instructions, the defense is now presented by a converse instruction.

██ Unless defendant's evidence shows him to be negligent as a matter of law, the defendant ought to be given the latitude to argue all of the evidence and submit all factual questions to the jury so that they may determine the liability, if any, of the defendant. The thrust of the defendant's argument (although the words "sole cause" were not used) was that not only was the defendant not negligent but the collision was the direct result of the conduct of Pfeiffer. This the defendant had the right to do even if the argument is denominated a sole cause argument. The argument was in effect that the defendant was not negligent and that the conduct of the defendant was not the effective, proximate cause of the collision. The jury has the right to cull and sift the evidence ac-

cepting or rejecting any part or all of the testimony. While the sole cause instructions are no longer permissible under MAI, counsel "had the right to argue the facts which would demonstrate that the accident was caused solely by another's negligence. Gathright v. Pendegraft, Mo.Sup., 433 S. W.2d 299, 308 [12]." Cook v. Cox, Mo. Sup., 478 S.W.2d 678, 682; see also Will v. Gilliam, Mo., 439 S.W.2d 498, 501.

The granting of a new trial by the trial court on the ground specified was erroneous. The judgment is reversed and the jury verdict reinstated.

DOWD, P. J., and SMITH, J., concur.